[No. 9914.　In Bank. — January 31, 1887.]

BOYS' AND GIRLS' AID SOCIETY, Respondent, *v.* CHRISTIAN REIS, Treasurer, etc., Appellant.

Commitment of Minor Criminals to Private Reformatory Institutions — Constitutional Law — Act of March 15, 1883. — The act of March 15, 1883, — section 1388 of the Penal Code, — providing in effect that when a minor has been convicted of a misdemeanor or felony, the court may suspend judgment, and commit him to the custody of the officers of some non-sectarian charitable corporation, conducted for the purpose of reclaiming criminal minors, and may, in its discretion, direct the payment of the expenses for the maintenance of such minor, not exceeding a specified amount, by the county where the criminal proceeding is pending, is not in conflict either with article 4, section 22, of the constitution, prohibiting the drawing of money from the state treasury for the benefit of any corporation not under the exclusive management of the state; or with article 9, section 8, prohibiting the appropriation of public money for the support of any schools not under the exclusive control of the officers of the public schools; or with article 11, section 13, prohibiting the delegation of municipal functions to private corporations; or with article 1, section 11, requiring that all laws of a general nature shall have a uniform operation.

Id. — Police Judge's Court may Commit. — The Police Judge's Court of the city and county of San Francisco is a court within the meaning of section 1388 of the Penal Code, and may exercise the jurisdiction granted by that section.

Id. — Order for Payment of Minor's Expenses — Approval by Supervisors not Necessary. — An order of such court for the payment out of the city and county treasury of the sum provided for in the statutes is not an exercise of the right of taxation without representation; and where such an order is made, it is the duty of the treasurer to comply therewith, notwithstanding the demand has not been first approved by the board of supervisors.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The proceeding was for a writ of mandate to compel the defendant, as treasurer of the city and county of San Francisco, to pay to the petitioner out of the city and county treasury the sum of $1,275, being the amount called for 'by fifty-one several orders of the Police Judge's Court of the city and county, issued in favor of the petitioner at divers times between the 25th of July, 1883, and August 3, 1884, in pursuance of the authority conferred by section 1388 of the Penal Code. The furthur facts are stated in the opinion.

*John L. Love,* for Appellant.

*Lloyd Baldwin, John A. Stanley,* and *E. F. Swortfiguer,* for Respondent.

FOOTE, C.—This is an appeal from a judgment ordering a peremptory writ of mandate to issue commanding the defendant, treasurer, etc., forthwith to pay out of the treasury of the city and county of San Francisco certain sums of money.

The defendant urges that the statute enacted by the legislature, dated the fifteenth day of March, 1883, adding a new section to the Penal Code, to be known as section 1388, is unconstitutional. The said act is to be found in the statutes of 1883, page 377.

He also contends that the statute in question does not contemplate that the treasurer of said city and county should have incumbent on him as a mere ministerial duty the payment of the demands on the treasury by the direction of the court.

Section 1388 of the Penal Code is as follows:—

"Final judgment may be suspended on any conviction, charge, or prosecution for misdemeanor or felony, where, in the judgment of the court in which such proceeding

is pending, there is a reasonable ground to believe that such minor may be reformed, and that a commitment to prison would work manifest injury in the premises. Such suspension may be for as long a period as the circumstances of the case may seem to warrant, and subject to the following further provisions: During the period of such suspension, or of any extension thereof, the court or judge may, under such limitations as may seem advisable, commit such minor to the custody of the officers or managers of any strictly non-sectarian charitable corporation conducted for the purpose of reclaiming criminal minors. Such corporation, by its officers or managers, may accept the custody of such minor for a period of two months (to be further extended by the court or judge should it be deemed advisable), and should said minor be found incorrigible and incapable of reformation, he may be returned before the court for final judgment for his misdemeanor. Such charitable corporation shall accept custody of said minor, as aforesaid, upon the distinct agreement that it and its officers shall use all reasonable means to effect the reformation of such minor, and provide him with a home and instruction. No application for guardianship of such minor by any person, parent, or friend shall be entertained by any court during the period of such suspension and custody, save upon recommendation of the court before which the criminal proceedings are pending first obtained. Such court may further, in its discretion, direct the payment of the expenses of the maintenance of such minor during such period of two months, not to exceed, in the aggregate, the sum of twenty-five dollars ($25), which sum shall include board, clothing, transportation, and all other expenses, to be paid by the county where such criminal proceeding is pending, or direct action to be instituted for the recovery thereof out of the estate of said minor, or from his parents. Such court may also revoke such order of suspension at any time."

In support of his first contention, the defendant argues that the act is in contravention of section 22 of article 4, section 8 of article 9, section 13 of article 11, and section 11 of article 1 of the constitution of this state.

They are as follows, respectively:—

Sec. 22, art. 4: "No money shall be drawn from the treasury but in consequence of appropriations made by law, and upon warrants duly drawn thereon by the controller; and no money shall ever be appropriated or drawn from the state treasury for the use or benefit of any corporation, association, asylum, hospital, or other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state; provided, that notwithstanding anything contained in this or any other section of this constitution, the legislature shall have power to grant aid to institutions conducted for the support and maintenance of minor orphans or half-orphans, or abandoned children, or aged persons in indigent circumstances,—such aid to be granted by a uniform rule, and proportioned to the number of inmates of such respective institutions; provided further, that the state shall have at any time the right to inquire into the management of such institutions; provided further, that whenever any county, or city and county, or city, or town shall provide for the support of minor orphans, or half-orphans, or abandoned children, or aged persons in indigent circumstances, such county, city and county, city, or town shall be entitled to receive the same *pro rata* appropriations as may be granted to such institutions under church or other control. An accurate statement of the receipts and expenditures of public moneys shall be attached to and published with the laws at every regular session of the legislature."

Sec. 8, art. 9: "No public money shall ever be appropriated for the support of any sectarian or denomina-

tional school, or any school not under the exclusive control of the officers of the public schools; nor shall any sectarian or denominational doctrine be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this state."

Sec. 13, art. 11: "The legislature shall not delegate to any special commission, private corporation, company, association, or individual, any power to make, control, appropriate, supervise, or in any way interfere with any county, city, town, or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments, or perform any municipal functions whatever."

Sec. 11, art. 1: "All laws of a general nature shall have a uniform operation."

We do not perceive that the section of the code under consideration is in conflict with section 22 of article 4 of the constitution.

That section has exclusive reference to the legislative power to appropriate or draw money from "the state treasury for the use and benefit of any corporation," etc.

Under section 1388 of the Penal Code, no money can be, or is in any manner sought to be, taken from the *state* treasury, and it does not affect the revenue of the state as such.

Nor has the legislature by that statute attempted to direct any absolute payment from a county treasury; it has vested in a court in the exercise of its wise and proper judicial discretion the right to order payment out of that treasury, to a limited extent, and in strict accordance with the letter of that law, certain sums of money in each given case, where such an order could be legally made according to the terms of the statute. It is not in conflict with section 8 of article 9 of the constitution, for that section has reference to *schools,* as such, in the ordinary acceptation of the term,—that is,

*common* and *public* schools, as spoken of in the constitution, such as are organized for the sole purpose of disseminating knowledge and imparting scholastic instruction.

The Boys and Girls' Aid Society, as constituted, appears to be a corporation which " is strictly non-sectarian and charitable, conducted for the purpose of reclaiming minors," and we do not see why the legislature might not as well allow a judge of a proper court to confide to the managers and directors of the corporation the custody of a minor who has been convicted of an infraction of the penal laws of the state, for a certain specified time, and to order the proper sum necessary to his maintenance while in such custody, out of a proper fund provided for the purpose and in the treasury of the proper county, as to order his imprisonment in the county jail, and the costs of his maintenance there to be paid out of said treasury. Both laws would have for their common object the reformation of the criminal and the prevention of crime, and would be necessarily constitutional, being the exercise of the " police power " essentially existing under the constitution as a legislative attribute. Nor do we perceive what "municipal power " is delegated under the act which is prohibited by section 13 of article 11.

The municipality of the city and county of San Francisco is a political corporation, and its functions are only such as are necessary to fulfill the purpose of its existence.

The creation of that municipality for the purpose of engaging in the charitable and praiseworthy labor of reclaiming and reforming criminal minors was not within the contemplation of the legislature which enacted the Consolidation Act, and other laws which govern and control the city and county of San Francisco as a municipal corporation, for such power is not therein expressly

granted, or necessarily implied from such grant, and it cannot otherwise exist. (*Wallace* v. *Mayor of San Jose,* 29 Cal. 186; *City of Oakland* v. *Carpentier,* 13 Cal. 546; *Argenti* v. *City of San Francisco,* 16 Cal. 283; Boone on Corporations, sec. 287; *In re Lee Tong,* 9 Saw. 333; Dillon on Municipal Corporations, sec. 89; Cooley's Constitutional Limitations, 194.)

It is not unconstitutional to apply the word "court" to a tribunal presided over by a police judge. It is an inferior court, which the legislature may establish in any incorporated city or town, or city and county. (Const., art. 6, sec. 1.)

Nor is the order of such court for the payment out of the city and county treasury, of the sum mentioned in the statute, an exercise of the right of "taxation without representation." The statute under which it is to be done contemplates the expenditure of such money, out of a fund to be provided for that purpose. It is alleged in the affidavits filed by the corporation respondent, admitted by the defendant and found by the trial court: "That said treasurer of said city and county, on said third day of October, 1884, had then, hitherto has had, and still has ample funds provided by law for the payment of said orders," —meaning the orders made by the Police Court of said city and county, which the defendant refused to pay.

The benefits of the reclamation of minors intended by the statute would be enjoyed by the whole community, and no inequitable burden cast upon any person.

The police judge of any incorporated city or town, or city and county, may be elected by only a part of all the qualified voters thereof, and yet he would be the judge of an inferior court such as the constitution (art. 6, sec. 1) contemplates, and any such court could exercise the jurisdiction granted by section 1388 of the Penal Code, and that would not be a violation of the constitu-

tion where it declares: "All laws of a general nature shall have a uniform operation." (Const., art. 1, sec. 2.)

The statute says: "Such court may further, in its discretion, direct the payment of the expenses of the maintenance of such minor during such period of two months, not to exceed in the aggregate the sum of twenty-five dollars ($25), which sum shall include board, clothing, transportation, and all other expenses, to be paid by the county where such criminal proceeding is pending," etc.

We know of no other way for such payment to be made than out of the treasury of the county where the "proceeding is pending."

The order made herein in each case directs the payments to be made "out of the treasury of the city and county of San Francisco," where each and all of the "proceedings were pending."

To the judge of the proper court the statute commits the discretion of making the orders for such payments; where such a discretion is by law conferred upon a specific officer, such officer must exercise that discretion personally. (Boone on Corporations, sec. 310; *Richardson* v. *Heydenfeldt,* 46 Cal. 68; *City of Stockton* v. *Creanor,* 45 Cal. 646.) And when properly exercised, the board of supervisors is not required to supervise the action of the court. (*Ex parte Reis,* 64 Cal. 243, 244.)

The demand in controversy is not one of those that is to be first approved by the board of supervisors, for section 85 of the Consolidation Act includes only such demands as are mentioned in that act and are authorized by it. (Consolidation Act, secs. 97, 98; *Ex parte Reis,* 64 Cal. 239.)

The statute under consideration does not attempt to repeal said section 85, nor does it affect the act itself, for the provisions of the Consolidation Act are left untouched, its officers exercise the same functions under

it after as before the enactment of the statute.    It does superadd a duty on the treasurer, that of paying the demand mentioned under the order of the judge of the Police Court, but that does not affect any power or duty vested in him by the Consolidation Act.    (*Ex parte Reis*, 64 Cal. 240.)

The judgment should be affirmed.

BELCHER, C. C., and SEARLS, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.