[Civ. No. 12566. Second Appellate District, Division One.—August 5, 1940.]

W. WESLEY LA RUE, Respondent, v. BOARD OF TRUS-TEES OF THE BALDWIN PARK SCHOOL DIS-TRICT IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA et al., Appellants.

[Civ. No. 12567. Second Appellate District, Division One.—August 5, 1940.]

AMY TEMPLE DE FOUNT, Respondent, v. BOARD OF TRUSTEES OF THE BALDWIN PARK SCHOOL DISTRICT IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA et al., Appellants.

[Civ. No. 12568. Second Appellate District, Division One.—August 5, 1940.]

MILDRED L. ALEXANDER IBANEZ, Respondent, v. BOARD OF TRUSTEES OF THE BALDWIN PARK SCHOOL DISTRICT IN THE COUNTY OF LOS AN-GELES, STATE OF CALIFORNIA et al., Appellants.

Clifford W. Twombly and Ardene D. Boller for Appellants.

Tanner, Odell & Taft and Robert A. Odell for Respondents.

Earl Warren, Attorney-General, F. Walter French, Deputy Attorney-General, and Alfred E. Lentz, as *Amici Curiae,* on Behalf of Respondents.

WHITE, J.—The Board of Trustees of Baldwin Park School District in Los Angeles County; V. R. Long, John Bryant, and W. E. Ward, as members of such board, and the Baldwin Park School District appeal from adverse judgments ordering them to reinstate respondents as permanent employees of the aforesaid school district for the school year 1939–1940.

The legal questions involved in the three cases making up this appeal are identical, except that in the case of respondent La Rue the judgment is challenged by appellants upon the additional ground that it provided for the payment of the same salary to him for the school year 1939–1940 as had been fixed for him for the preceding school year of 1938–1939, he having been originally employed as a principal and having served in that capacity up to the time when the school board notified him of his dismissal at the end of the 1938–1939 school year. By reason of the foregoing, the three appeals have been consolidated and are presented upon one set of briefs.

The actions now before us were initiated through the filing by respondents of petitions for writs of mandate. By stipulation filed in the lower court it was agreed that the facts are as follows: That at all times pertinent to this litigation the respondents were the holders of general elementary school credentials and certifications, were duly qualified and certified to teach any subject or render any teaching services in any elementary school in the State of California, and were the holders of general elementary life diplomas; that the respondent W. Wesley La Rue was the holder of general secondary and secondary administrative credentials and certification and was qualified to hold any supervisory or administrative position in elementary schools, and is the holder of a general secondary life diploma and secondary school administration life diploma. That the Baldwin Park School District

at all times mentioned maintained elementary schools, including kindergarten and the grades from first to eighth inclusive, and that there was employed by the board of trustees of said district a principal for each of said schools and a district superintendent for all the schools of the district. That at all times mentioned said district had in its employ in excess of seventeen teachers. That respondent W. Wesley La Rue was employed by Baldwin Park School District for the school year 1933–1934 in a position requiring certification qualifications, to wit, that of principal, the said district reserving the right to change La Rue's assignment of duties as it might deem wise at any time during the year, and that such teacher was by the board of trustees classified as a probationary employee of said district for said school year and duly performed all services required of him by said board in said position for the complete year of 1933–1934. That respondent La Rue was re-employed for the school year 1934–1935 at a salary of $1700 for said school year, payable at the rate of $170 per month for each of the school months of said school year. That such respondent was re-employed by the school district for the school year 1935–1936 at a salary of $1800 and performed all services required of him for such year. That said respondent was again re-employed in said position by said district for the school year 1936–1937 at a salary of $1800 per school year, payable in installments of $180 per month for each of the school months, and that he duly performed all services required of him for that year. That again, for the school years 1937–1938 and 1938–1939, respondent La Rue was re-employed under the same terms and conditions, except as to salary.

As to respondent Amy Temple De Fount, it was agreed by stipulation that she was employed by Baldwin Park School District for the school year 1935–1936 in a position requiring certification qualifications, to wit, as a full-time regular teacher in the elementary schools of said district, at a salary of $1200 for such school year, payable in installments of $120 each at the end of each of the ten school months of the school year, and was by the board of trustees classified as a probationary employee of said district for said school year, and duly performed all services required of her by said board in said position for the complete school year; that said respondent was re-employed upon the same terms and

conditions, except as to salary, for the school year 1936–1937 and the school year 1937–1938; and that again, said respondent was re-employed in said position for the school year 1938–1939, at a salary of $1320 for such school year.

It was also stipulated that respondent Mildred L. Alexander Ibanez was employed by the district in a position requiring certification qualifications, to wit, as a full-time regular teacher in the elementary schools of the district, and was classified by the board of trustees as a probationary employee, and duly performed the services required of her, for the school years 1934–1935, 1935–1936, 1936–1937, 1937–1938, and 1938–1939, and was duly classified as a probationary employee of said district during the first three years of her employment.

It was further stipulated that on May 12, 1939, appellants gave to each of the respondents a notice in writing that his or her services would not be required for the school year 1939–1940, and that his or her services in said district would terminate on June 9, 1939, as provided in a certain resolution adopted by the board on May 12, 1939, ''which directed a notice to petitioner'' (respondents in this court) ''and five other certificated employees of said district that their services would not be required after the close of the school term June 9, 1939, under authority of Section 5.681 of the School Code of the State of California''. That none of the respondents acquiesced in said dismissal or agreed to such termination of employment, and that on or about June 30, 1939, the respondents duly notified appellants that they stood upon their rights as permanent employees and demanded reinstatement; that respondents and each of them made written demand for reinstatement on August 11, 1939, and notified the board that they would be present at the opening of schools ready, willing and able to perform their duties as permanent employees; that when the schools were opened on September 11, 1939, respondents presented themselves and requested assignment to their duties, but that appellants refused to permit respondents to perform any duties as permanent employees of the district, or at all, and have at all times since refused and still refuse to admit respondents to their alleged status of permanent employees or permit them to perform any service whatever.

In the main, this appeal centers upon the question as to whether respondents had become permanent employees of

the school district by reason of what is termed ''teachers' tenure''. The applicable sections of the School Code on that question are section 5.500, which provides as follows: ''Every employee of a school district of any type or class, who after having been employed by the district for three complete consecutive school years in a position or positions requiring certification qualifications, is re-elected for the next succeeding school year to a position requiring certification qualifications shall, except as hereinafter otherwise provided, at the commencement of the said succeeding school year, be classified as and shall become a permanent employee of the district''; and section 5.501 of the same code, reading: ''Every employee of a school district of any type or class, having an average daily attendance of less than 850 pupils, who, after having been employed by the district for three complete consecutive school years in a position, or positions, requiring certification qualifications and is re-elected for the next succeeding school year to a position requiring certification qualifications, may be classified by the governing board of the district as a permanent employee of the district. If said classification be not made the employee shall not attain permanent status and may be re-elected from year to year thereafter without becoming a permanent employee until said classification is made.''

The controversy here revolves around what the legislature intended by the following language in the last-quoted section: ''Every employee of a school district of any type or class, having an average daily attendance of less than 850 pupils.'' It is conceded that if the pupils enrolled in the kindergarten maintained by the school district are included in the computation with the pupils in grades one to eight, then there was an average daily attendance of more than 850 throughout all the school years from 1933–1934 to 1938–1939, while if the average daily attendance of pupils in the kindergarten is omitted from such compilation, then there was an average daily attendance of less than 850 pupils for the school years 1933–1934, to and including 1936–1937. It is at once apparent that if the kindergarten pupils should be included in the computation, then all the respondents had, under the provisions of section 5.500 of the School Code, *supra*, attained by operation of law the classification of permanent employees of the school district, and were not

subject to dismissal in the manner resorted to herein by the school authorities. The dismissal of permanent employees is governed by chapter VII, article II, sections 5.650 et seq. of the School Code, which provisions were not followed in the instant cases, but the dismissals were decreed by the board upon the theory that none of the respondents had attained the classification of permanent employees, but were probationary employees, subject to dismissal under the provisions of section 5.681 of the School Code.

 We are in accord with the determination of the trial court that the action of the school board in making yearly contracts with respondents, with the idea of employing them for one year only, is not determinative of their status, but that when by the operation of law a teacher is entitled to classification as a permanent employee the failure of the school board to so classify such teacher does not prevent the classification, but the same inures by operation of the statutes. (*La Shells* v. *Hench,* 98 Cal. App. 6 [276 Pac. 377]; *Chambers* v. *Davis,* 131 Cal. App. 500 [22 Pac. (2d) 27]; *Gastineau* v. *Meyer,* 131 Cal. App. 611 [22 Pac. (2d) 231]; *Abraham* v. *Sims,* 2 Cal. (2d) 698 [42 Pac. (2d) 1029]; *Mitchell* v. *Board of Trustees,* 5 Cal. App. (2d) 64 [42 Pac. (2d) 397]; *Sherman* v. *Board of Trustees,* 9 Cal. App. (2d) 262 [49 Pac. (2d) 350].)

 Therefore, the question squarely presented to us is whether, as contended by appellants, the legislative expression "every employee of a school district of any type or class having an average daily attendance of less than 850 pupils" is to be so construed as to exclude from calculation the pupils of the kindergarten. That kindergartens should be considered as an integral part of the school system of this state seems to us to be thoroughly established. In article IX, section 6, of the Constitution it is ordained that the public school system shall include day and evening elementary schools and such day and evening secondary schools, technical schools, *kindergarten* schools, and normal schools or teachers' colleges, as may be established by legislative, municipal or district authority. Section 3.110 of the School Code makes it mandatory upon boards of education in every school district, upon the petition of parents or guardians of 25 or more children, between the ages of 4½ and 6 years, to establish and maintain kindergartens. Part II of divi-

sion 3 of the School Code, wherein appears the aforesaid section 3.110, is entitled "Elementary Schools". Chapter I thereof is entitled "Kindergartens"; while article I provides for the "establishment" of kindergartens. Therefore the conclusion that the Constitution of this state, as well as the School Code, classifies kindergartens as a part of the elementary school system of California seems inescapable.

Appellants rely upon sections 2.811, 2.877, 2.931, 2.1220, 3.530, 3.570, 3.634 and 3.667 of the School Code, but these sections are not controlling, for the reason that they have no connection with the right of a teacher to acquire permanent status after re-employment throughout a probationary period. For the same reason are the cases of *Stockton School District* v. *Wright,* 134 Cal. 64 [66 Pac. 34], and *Los Angeles County* v. *Kirk,* 148 Cal. 385 [83 Pac. 250], not helpful to a solution of the problem with which we are confronted. Both of these cases pass upon the appropriation of state moneys to the elementary schools and expressly limit the application of such moneys to schools named in sections 5 and 6 of article IX of the Constitution, as such sections stood at the time of the rendition of the decisions in question in 1901 and 1905. By the amendment of 1920 the constitutional provisions just cited were materially changed and elaborated by writing into section 6 thereof that among other schools kindergartens should also be included in the public school system of the state, and which amendment to section 6, *supra,* also directed the legislature to provide for the levying of school district taxes by the county boards of supervisors for the support of kindergartens. Moreover, as far back as 1895 it was held in *Sinnott* v. *Colombet,* 107 Cal. 187 [40 Pac. 329, 28 L. R. A. 594], that kindergartens should be regarded "as part of the public primary schools". In an interesting and illuminative review of the historical background of the kindergarten, our Supreme Court in the last-cited case points out the educational value of the kindergarten for developing in the child the habits of discipline, self-control, harmonious action and purpose, as well as some definite lessons of fact, thus recognizing the kindergarten as an integral part of the educational system prevailing in the primary schools of the state. Furthermore, the words "average daily attendance" are expressly used with reference to kindergartens in section 3.140 of the School Code,

which directs discontinuance of kindergartens at the close of a year during which "the average daily attendance" shall be ten or less for the school year. Appellants do not question the right of a kindergarten teacher to acquire permanent tenure after fulfilling the requirements therefor as a teacher in kindergarten. Surely an anomalous situation would be presented were we to hold, as we must, that kindergarten teachers may acquire permanent tenure, but that the pupils· attending such kindergarten are not to be counted in the application of the tenure statute. Manifestly, the legislature never contemplated any such absurdity.

■ Another reason for holding that pupils attending kindergartens should be included in computations for the purpose of determining teachers' tenure is the well established rule of statutory interpretation that the contemporaneous practical construction given a statute by the executive officers of a state charged with the administration of the laws having a state-wide application is entitled to consideration by a court called upon to construe such statutory provision. (*Godward* v. *Board of Trustees,* 94 Cal. App. 160, 163 [270 Pac. 725].) True, such contemporaneous construction is not conclusive of the question under consideration, but is entitled to great weight. In 1935 the attorney-general of California advised the state department of education, the superintendent of public instruction, and the legal advisers to school boards and trustees throughout California that kindergarten pupils were to be included under section 5.501 of the School Code in determining tenure, and through the intervening years that ruling has remained unquestioned. Were such procedure contrary to the legislative intent, we can assume that the lawmaking body would by appropriate and specific legislation have so indicated. We therefore hold that in construing sections 5.500 and 5.501 of the School Code the average daily attendance of an elementary school district must be held to include therein the average daily attendance of any kindergarten or kindergartens maintained by such district.

■ It is next contended by appellants that the petitions for writs of mandate filed herein do not state facts sufficient to constitute causes of action, for the reasons that such pleadings are devoid of any allegation that the appellant board or district has funds available with which to comply with any mandate issued by the court. It is argued by appel-

lants that a school district is but an agency of the state to promote the convenience of the public at large, and that before a mandate can issue requiring the expenditure of such public money it must first be shown that the money is available, citing *Sutro Heights Land Co.* v. *Merced Irr. Dist.,* 211 Cal. 670, 703, 704 [296 Pac. 1088]. In this claim appellants cannot be upheld. In the first place, we are inclined to believe that appellants are foreclosed from raising this question for the first time on appeal, and further, that the failure of respondents to allege in their petitions the condition of the funds of the school district did not render the pleadings demurrable, as that was a matter of defense. Assuming, however, that appellants had set up such a defense in the lower court, it is unavailing under the facts of the cases before us. The salaries due these respondents as school teachers are obligations of the school board not responsive to the rule contended for by appellants. (*Lotts* v. *Board of Park Commrs.,* 13 Cal. App. (2d) 625, 635 [57 Pac. (2d) 215].)

The next question raised is whether when, as here, a writ of mandate orders the reinstatement of a teacher, there is imposed upon such teacher the duty to seek remunerative employment during the period when the question of reinstatement is being litigated, or if employed during such period must the teacher remit any remuneration received, the same to be applied as a deduction from the salary ordered to be paid the teacher under the terms of the mandate to be issued. This contention is without merit. Where, as here, the admitted facts are that respondents were prevented by appellants from performing their contracts or rendering any services, the former were not bound to seek other employment. (*Giguiere* v. *Patterson,* 138 Cal. App. 167 [31 Pac. (2d) 804].)

Finally, appellants challenge that portion of the writ of mandate granted respondent La Rue which, after directing his reinstatement as a permanent employee of the school district in the capacity of a classroom teacher, orders that his compensation be fixed in the sum of $2,100 for the school year 1939–1940. The agreed facts are that respondent La Rue was originally employed by the school district for the school year 1933–1934 in a position requiring certification qualifications, to wit, that of principal, with the right re-

served in the school board to change respondent La Rue's assignment of duties as such board "might deem wise at any time during the year". It is at once apparent that the school board is clothed with the right to assign Mr. La Rue to classroom teaching or to the duties of principal or other supervisory or administrative work, as in its judgment is deemed proper, but being a permanent employee, he retained his permanent classification as a classroom teacher. (School Code, sec. 5.502.) Further, under the tenure law, when the board contracted with respondent La Rue for a salary of $2,100 for the school year 1938–1939, and, as the stipulation of facts shows, took no action during that particular school year to fix a different salary for the ensuing school year, respondent La Rue was entitled to the same salary for the 1939–1940 school year as he received for the preceding school year. (*Abraham* v. *Sims*, 2 Cal. (2d) ·698, 711 [42 Pac. (2d) 1029]; *Mitchell* v. *Board of Trustees*, 5 Cal. App. (2d) 64, 69 [42 Pac. (2d) 397].)

Having attained the status of permanent employees of the school district, and having been automatically, by operation of law, re-elected to their positions for the fourth year, respondents are each entitled to reinstatement for the school year 1939–1940, at the same salary fixed for them for the school year 1938–1939.

For the reasons herein stated, the judgments from which these appeals are taken are, and each of them is, affirmed.

York, P. J., and Doran, J., concurred.