[Civ. No. 17844. First Dist., Div. Two. May 14, 1958.]

H. W. BESEMAN, Petitioner and Appellant, v. LUCIEN A. REMY et al., as Members of the Board of Trustees of the Marin Junior College District et al., Respondents and Appellants; and five consolidated cases.*

* C. W. O'Boyle v. Lucien A. Remy; J. L. Macaulay v. Lucien A. Remy; N. H. McCollom v. Lucien A. Remy; J. Lee Chaille v. Lucien A. Remy; E. E. Shafer v. Lucien A. Remy.

Joseph Genser for Petitioner and Appellant.

Leland H. Jordan, County Counsel (Marin), and E. Warren McGuire, Assistant County Counsel, for Respondents and Appellants.

BRAZIL, J. pro tem.*—The Marin Junior College maintains one school campus at Kentfield and up until the middle of July 1955 had conducted the school program at nearby San Quentin State Prison. The six respondents were all certificated junior college teachers, confining their teaching activities entirely to the San Quentin school program under contracts of employment with the Marin Junior College District. Each of them had taught consecutively for five years or

---

*Assigned by Chairman of Judicial Council.

more at San Quentin for the school district and each had been reelected to teach for the district after completion of three consecutive years, with the possible exception of respondent O'Boyle. None of them had ever resigned or been dismissed for cause, and each was notified by letter dated April 28, 1955, of his dismissal effective June 30, 1955. The average daily attendance of the school district at all times with which we are concerned exceeded 850. At no time before the letter of dismissal had appellants made any attempt to determine respondents' ability to perform other teaching services for the junior college which were being rendered by probationary teachers or teachers junior to any of them in point of service. The appellant junior college terminated its San Quentin school program on July 14, 1955.

With the exception of Mr. O'Boyle, all of the respondent teachers had actually been classified as permanent employees of the school district, and each had received and had signed a contract of employment in which he was specifically referred to as a permanent school employee. Mr. O'Boyle's situation must be separately discussed as in his case he taught regularly from November 1, 1950, to June 30, 1955, but from and after June 30, 1953, he was employed on consecutive three months term notices of employment, each of which he also signed. Upon failure of the school district to retain respondents for the school year beginning July 1, 1955, or to pay them any salary after that time, petitions for writs of mandate were filed to compel the appellants to assign respondents as classroom teachers in the district and to recover salaries due and unpaid since July 1, 1955. The petitions were based on the theory that each petitioner had acquired permanent status or tenure, had never been discharged for cause, that his services were wrongfully terminated by the appellants. The defense to the petitions and the basis of the appeal is the contention that each of the respondents, although a duly accredited and certificated junior college teacher, had not acquired tenure because each, during all the time of employment with the district, had occupied a position which did not require certification qualifications. Stated in another way, the appellants maintain that the San Quentin school program is not a part of the Marin Junior College; that the district could have, if it had so chosen, employed noncertificated employees to conduct the classes at the prison.

The judgments of the superior court ordered appellants to pay each respondent an amount which equaled the difference

between what each would have gotten from the district if re-employed and what each one of them had received during the year from other teaching employment during the regular 180 day yearly teaching period. Assuming the writs should have been granted, appellants contend that the resulting amounts are incorrect for the court did not allow, as a credit against the yearly salary, an additional amount each respond-ent had earned during the year from outside sources such as night or summer employment as further mitigation of dam-ages.

The appeal is from the judgments granting the writs and the amount of allowance made in each case. The respondents have cross-appealed, by which they claim error only in the amount each was allowed. It is respondents' contention that each teacher unlawfully not reemployed by the district was entitled to the whole of his yearly salary without any deduc-tion for salaries he may have received from another school district which employed him during the year.

If the respondents were permanent employees of the appel-lant district at the beginning of the 1955-56 school year, they are entitled to the writs of mandate commanding the pay-ment of salaries and assignment to classroom teaching in the district, and conversely the writs ought not to have been granted if they were not such permanent teachers. In the situation presented in this school district, permanent status is acquired by virtue of the section of the Education Code set out below, or not at all.

"Section 13081. Every employee of a school district of any type or class [1] having an average daily attendance of 850 or more, . . . who, [2] after having been employed by the district for three complete consecutive school years [3] in a position or positions requiring certification qualifications, [4] is reelected for the next succeeding school year to a posi-tion requiring certification qualifications shall, [5] at the commencement of the succeeding school year be classified as and become a permanent employee of the district."

In Mr. O'Boyle's case, while he taught regularly and continuously for five years, during the last two years he was employed under a written contract called a notice of employ-ment for only three months at a time, being paid on an hourly basis, and employment being contingent on a minimum class size. There is no merit in appellants' claim of laches as far as this teacher is concerned, for the district was in no way prejudiced by the delay, if any, in filing the petition. He was

teaching and being paid all the time up to June 30, 1955. He was not a substitute teacher as defined by Education Code, section 13103, for he was not replacing anyone or filling a position of a regularly employed person absent from service. He was not a temporary employee as defined by Education Code, section 13104, for he was not employed "to serve from day to day during the first three months of any school term to teach temporary classes not to exist after the first three school months of any school term." The latter section provides further that "if the classes or duties continue beyond the first three school months of any school term . . . the certificated employee, unless a permanent employee, shall be classified as a probationary employee."

Appellants maintain that Mr. O'Boyle was not employed under a written contract for a year and therefore could not have become a permanent employee, even though he taught continuously for more than a year after having been employed and classified during the first three years as a probationary teacher. The appellants make no attempt to name the classification of teacher this petitioner became by reason of his continued, consecutive service on three months written contracts. There does not appear any authority in the code for this short term form of contract. Appellants rely on *Richardson* v. *Board of Education*, 6 Cal.2d 583 [58 P.2d 1285] and *Hogsett* v. *Beverly Hills School Dist.*, 11 Cal.App.2d 328 [53 P.2d 1009]. In the first cited case, the teacher was hired as a substitute for the fourth year, and in the second one the teacher had not completed a full teaching year as was required by the law in effect at that time. If appellants were correct in their position on this phase of the case, school districts by the simple method of giving fourth year teachers only short term contracts could effectively defeat the purposes of the teachers' tenure law. The trial court was correct in finding that Mr. O'Boyle's rights were similar to those of the other five petitioners.

■ The controversy is settled by determining whether or not the several petitioners in their employment by the district have met the requirements of that portion of Education Code, section 13081, hereinbefore set out as bracket ■ If they were employed "in a position or positions requiring certification qualifications," then the writs were properly issued for it is agreed by all concerned that every other provision of that section has been met. It is not sufficient, in order to get tenure, to have been employed for the required

number of years by the school district unless that employment is of a kind which requires certification. A certificated employee could be employed by the district as a custodian or business manager, positions which could be filled by noncertificated employees. The time spent in such a position would not be counted toward tenure. (*Brintle* v. *Board of Education*, 43 Cal.App.2d 84 [110 P.2d 440].)

What school employment requires the employee to hold a certificate of one kind or another appears to be determined by Education Code, sections 12125 to 12146.1, inclusive, which sections set up standards for and authorize issuance of various credentials for different kinds and types of employment. The only positions requiring certification qualifications are those set forth in the sections last cited. (*Brintle* v. *Board of Education, supra.*) Appellants then argue that nowhere in these sections is there a special credential for teaching classes in a state prison and, therefore, it follows that the latter type of work does not require certification qualifications within the meaning of section 13081, and that the judgments of the trial court must be reversed. However, teaching a class of students within a state prison, while being employed to do so by a school district, is not necessarily teaching for the prison nor does the teacher become an employee of the Department of Corrections because, in conducting the classes, he must teach under conditions of control and supervision which do not occur on the campus. The control and supervision of prisoners by the prison authorities is not as students, but as prisoners. To a far lesser degree, of course, junior college students while attending regular school classes still come within the control and supervision of their parents. There can be little doubt that ''[t]he credentials set forth in Sections 12125-12146.1 vary substantially in reference to the positions authorized to be *taught* by them; some authorize service as a *teacher* in a college (Section 12127); some authorize service as a *teacher* in certain grades only,'' etc. (appellants' opening brief, p. 11, emphasis added). It must be remembered that what these petitioners were doing at the state prison was teaching classes conducted as part of the Marin Junior College; they were not acting as supervisors, custodians or researchers. The fact that the students couldn't get away, that they were older than the average of junior college students, that the admission to classes was limited to inmates, that courses, hours and facilities were different from those at the regular campus, and the fact that prison authorities might be consulted on who the

district should hire as a teacher or that the teacher's methods of instruction of necessity might be restricted, does not alone determine that the classes so conducted were not a part of the educational system of appellant school district.

Section 8006.1 of the Education Code enacted in 1947 recognizes the right of the governing board to "establish and maintain classes for the inmates." It is reasonable to interpret such language to mean that the classes so established and maintained became a part of the school system, not a part of the state penal system. Houses of correction, penal institutions and the like are, of course, not schools within the public school system of the state. (*Boys & Girls Aid Society* v. *Reis*, 71 Cal. 627 [12 P. 796].) But that is not the same thing as saying that a public school cannot establish a class for prisoners within the prison walls. Appellants have not cited any authority that such cannot be done. The argument that, in speaking of "classes" in section 8006.1, the Legislature does not mean part of a school is not reasonable, for schools are substantially institutions composed of classes.

The evidence discloses that the classes at San Quentin were at all times treated and considered as part of the Marin Junior College. The form of teacher contracts was similar, five of the petitioners were carried on the records as permanent employees of the district, they were listed as faculty of the day school program, the teachers at San Quentin maintained a full-time teaching program, and the students in the classes at the prison were considered students of the college for apportionment of funds from the state. The school principal, in making up his annual report which listed the students at San Quentin as part of the average daily attendance of the college, signed an affidavit to the effect that "no illegal attendance has been included in this report nor any attendance except that of pupils while engaged in educational activities required of such pupils and under the immediate supervision and control of an employee of the district who possessed a valid certification document registered as required by law authorizing him to render service in the capacity and during the period in which he served." The appellants regularly reported the average daily attendance to the State Department of Education, showing plainly that it included attendance at San Quentin. The college received its apportionment of funds from the state on the basis of that attendance and upon the common understanding of all that San Quentin classes were part and parcel of the Marin Junior College curriculum.

The conduct of various governmental bodies, officials and employees, as herein in part set forth, does not in and of itself make something legal which was actually illegal, nor can it be the basis of an estoppel. It is important, however, in determining whether or not the prison classes were a part of the school, for if they were then the teachers who conducted them would have to be certificated. It is also of considerable significance in the application of the rule of contemporaneous construction of a statute.

"Another reason for holding that pupils attending kindergartens should be included in computation for the purpose of determining teachers' tenure is the well established rule of statutory interpretation that the contemporaneous practical construction given a statute by the executive officers of a state charged with the administration of the laws having a statewide application is entitled to consideration by a court called upon to construe such statutory provision. (*Godward* v. *Board of Trustees,* 94 Cal.App. 160, 163 [270 P. 725].) True, such contemporaneous construction is not conclusive of the question under consideration, but is entitled to great weight." (*La Rue* v. *Board of Trustees,* 40 Cal.App.2d 287, p. 295 [104 P.2d 689].) If ever there was a case for the application of the rule of contemporaneous construction, this one is surely it, for everybody, and there were many, construed the applicable statutes to require certification for employees teaching in the classes at San Quentin. Not only the school officials and the teachers of the district, but the legal advisor of the district, who would be the predecessor of appellants' present counsel, the State Department of Education and its legal advisor, the attorney general, construed the statutes for ten years or more as respondents maintain they should have been interpreted. On the basis of such construction, large sums of money have been apportioned to the school district by the state over the years, which would, if appellants were correct, have been illegal. The attorney general of the state in 19 Attorney General Opinions 210 had occasion to consider the provisions of Education Code, section 8006.1. After quoting the section, the opinion states "Where school districts are requested to conduct cosmetology *schools* in penal institutions of the state, *students* in such schools would be brought within the provisions of Act 7419, Deering's General Laws, . . . We are, therefore, of the opinion that while the State Board of Cosmetology may not license schools of cosmetology established in penal institutions, nevertheless when a local school district conducts classes in cosmetology" (§ 8006.1) the board "may

evaluate the courses and shall recognize a graduate of such a *school*," etc. (emphasis added).

It may be that a considerable portion of the school work done in the classes at the prison was below the junior college level, but that in and of itself would not change the result. (*Holbrook* v. *Board of Education,* 37 Cal.2d 316 [231 P.2d 853].) In that case, the Supreme Court held that a certificated employee whose certificated duties required only one-fourth of his time, the balance being devoted to school work not requiring certification, was nevertheless entitled to full-time permanent employment.

■ The appellants claim that the school district is entitled to further credit as mitigation of damages. Each of the teachers did earn money in addition to that which he was paid by the school which hired him for an amount of time comparable to that which would have been required at the junior college. Such additional income was not considered in mitigation of damages and correctly so, for the time of teaching required at the two schools being the same, additional income could be earned at either place.

■ The respondents in their cross-appeal claim they are entitled to the full annual salary without deduction of amounts earned as teachers at other schools. The petitioners were not discharged for cause so the requirement of payment of full salary contained in Education Code, section 13555, is not applicable. A teacher is a public employee and not a public officer (*Leymel* v. *Johnson,* 105 Cal.App. 694 [288 P. 858]); so petitioners may not successfully claim that the salary is only an incident to an office and therefore payable in full as a right not based on a contractual relationship. The question here involved is not whether petitioners, who were prevented by appellants from performing their contracts, were bound to seek other employment, for, in fact, they all voluntarily accepted other lesser paying teaching positions. The case of *La Rue* v. *Board of Trustees, supra,* 40 Cal.App.2d 287 is not under the facts of these cases authority for respondents' position in this regard. The respondents were entitled to the difference in compensation between what they got at other schools and what they were entitled to receive under their contracts of employment, which resulted from their tenure status, with appellant school district; and that is the amount allowed each petitioner in the trial court.

Judgments affirmed.

Kaufman, P. J., and Draper, J., concurred.