[Civ. No. 6473.   Fourth Dist.   Sept. 7, 1961.]

VINCENT ANTHONY MEYER, Appellant, v. BOARD OF TRUSTEES OF SAN DIEGUITO UNION HIGH SCHOOL DISTRICT OF SAN DIEGO COUNTY et al., Respondents.

Tanner, Odell & Taft for Appellant.

Johnson & Stanton, Gardiner Johnson and Thomas E. Stanton, Jr., for Amici Curiae on behalf of Appellant.

Henry A. Dietz, County Counsel, and Donald L. Clark, Deputy County Counsel, for Respondents.

COUGHLIN, J.—This is a proceeding in mandamus to compel a school board to reinstate a teacher who claims permanent status but was discharged as a probationary employee.

The petitioner, who is the appellant herein, was a certificated public school teacher holding a general secondary credential; was employed by the Board of Trustees of San Dieguito Union High School District of San Diego County, California, which is a respondent in these proceedings and on this appeal, for the school years 1953-54 through 1958-59; was discharged without cause; offered his services for the

school year 1959-60, which were refused; and brought this proceeding to effect his reinstatement.

The issue for determination is whether during the 1958-59 school year the petitioner was a permanent employee of the respondent high school as defined by the provisions of the Education Code in effect during the period of his employment, i.e., 1953 to 1959. Applicable sections of the Education Code adopted in 1943, as amended, were renumbered and form a part of the Education Code adopted in 1959. In this opinion the Education Code sections referred to will bear the numbers given them by the 1943 statute, as amended, followed by the present section numbers in parenthesis.

In support of his position, the petitioner relies upon the provisions of section 13081 (13304) of the Education Code, the pertinent parts of which provide:

"Every employee of a school district of any type or class having an average daily attendance of 850 or more, . . . who, after having been employed by the district for three complete consecutive school years in a position or positions requiring certification qualifications, is re-elected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district."

The evidence establishes without dispute that, during the period of petitioner's employment, the respondent high school district maintained a senior high school and junior high schools, including classes in the seventh and eighth grades, with the exception of the year 1953-54 when it maintained a single junior-senior high school; that each year the petitioner taught the seventh grade and in addition, for the first two years taught the eighth grade, and for the last year taught the ninth grade; that during each of the school years for the period from 1953-54 through 1958-59 the average daily attendance of pupils of all grades maintained by the district exceeded 850; but, if the seventh and eighth grade pupils were not included in the computation, during the school years 1953-54 through 1956-57 such attendance was less than 850.

The respondent high school district contends that, under the provisions of sections 6911(11301), 6944(11404), 8760 (5609) and 8763(5612) of the Education Code, the attendance of pupils in the seventh and eighth grades should not be included in determining the district's average daily attendance and, as a consequence, because the average daily attendance of

the district for the school years 1953-54 through 1956-57 was less than 850, the petitioner did not attain permanent status under the provisions of section 13081(13304). The code sections relied upon by the respondent, to which section 6941 (11401) might be added because it is in the same vein, in substance, provide a method for computing the "units of average daily attendance" in elementary and high school districts for "a fiscal year," and direct that the average daily attendance of pupils attending the seventh and eighth grades maintained by a high school district shall be kept separate and shall be "credited" to the elementary school district in which those pupils reside. The petitioner contends that these code sections provide rules and regulations for the determination of units of average daily attendance for apportionment, tuition, and other fiscal purposes only; that they do not define the term "average daily attendance" as used in the tenure law, i.e., section 13081 (13304); that the average daily attendance referred to in the latter section is the actual average daily attendance of all pupils attending the schools of a high school district; that the junior high schools are a part of the high school district; that the pupils attending the seventh and eighth grades thereof should be considered in determining the actual average daily attendance of such a district; and, therefore, the district by which he was employed was of that size which automatically entitled him to permanent status upon completion of three consecutive years of employment and reemployment for the next succeeding year.

Each party contends that the statute is clear and needs no interpretation. In urging this contention the petitioner relies solely on the tenure section 13081(13304), and argues that the term "average daily attendance" used therein means actual average daily attendance of all pupils attending schools maintained by the district, including all grades therein. On the other hand, the respondents claim that sections 6911 (11301), 6944(11404), 8760(5609) and 8763(5612) should be considered a part of section 13081(13304), and argue that the term "average daily attendance" as used in the latter section means the average daily attendance of pupils attending the schools maintained by the district less the attendance of pupils in the seventh and eighth grades, which is credited to the elementary school districts in which they reside.

The legislative history of these code sections is significant. ■■■ The objects implicit in the history and background of legislation may be considered in determining the intent of the

Legislature as expressed in its most recent statutory expression. (*Estate of Ryan,* 21 Cal.2d 498, 512-514 [133 P.2d 626] ; *Shafer* v. *Registered Pharmacists Union,* 16 Cal.2d 379, 383 [106 P.2d 403] ; *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28].)

▉ Preliminarily it should be noted that junior high schools are a part of the secondary schools of the state, to be maintained by high school districts (Ed. Code, §§ 8702[5552], 8703[5553], 8721[5651], and 8722[5652].)

In 1915 the Legislature adopted section 1750a of the Political Code; authorized high school districts to establish intermediate school courses, now referred to as junior high school courses, and to admit thereto pupils who had completed the sixth year of elementary school; provided that the intermediate school courses should include studies generally taught in the seventh and eighth grades of elementary school; and directed that the average daily attendance of all pupils enrolled in the seventh and eighth grades of such intermediate school courses should be kept separate and credited to the elementary school district in which those pupils resided. (Stats. 1915, ch. 90, p. 113.) At the same time, the Legislature adopted section 1617d of the Political Code, which later became section 1617 of that code (Stats. 1917, ch. 552, p. 744), requiring the board of education in any city or the board of trustees of any school district situated within a high school district maintaining an intermediate school course, to permit pupils who had completed the sixth grade of an elementary school to attend the intermediate school course so provided, and to pay a tuition therefor. (Stats. 1915, ch. 90, p. 114.) At this time, by constitutional provision, the state school funds could be used only for the support of elementary schools (Cal. Const., art. IX, § 6, as per amendment adopted Nov. 3, 1908) ; could not be paid to high school districts (*Stockton School District* v. *Wright,* 134 Cal. 64 [66 P. 34]) ; and, by statute, were apportioned among the elementary school districts, in part on the basis of a teacher allowance formula, and the balance in proportion to the average daily attendance in each district. (Pol. Code, § 1858—Stats. 1915, ch. 726, p. 1435.) Up to this time no teacher tenure law had been adopted. The apparent purpose of the provisions of section 1617d directing the payment of tuition for pupils from an elementary school district attending the seventh and eighth grades maintained by a high school district, and the provisions of 1750a directing that the average daily attendance of such

pupils should be kept separate and credited to the elementary school district, was to obtain a portion of state school funds for the elementary education of children who were attending the seventh and eighth grades maintained by a high school district.

In 1920, by constitutional amendment, the use of state school funds was extended to the support of high schools. (Cal. Const., art. IX, § 6, as per amendment adopted Nov. 2, 1920.) Nevertheless, the previous provisions of the law requiring the average daily attendance of pupils attending the seventh and eighth grades maintained by a high school district to be kept separate and credited to the elementary school district in which they resided were retained as a part of a later statute extending the scope of the former law by permitting the attendance of such pupils from an elementary school district located outside of as well as within the school district in question. (Pol. Code, § 1617—Stats. 1921, ch. 551, p. 879.) It should be noted, however, that the 1920 constitutional amendment maintained a distinction between the elementary school average daily attendance and high school average daily attendance, viz., the elementary school tax levied by the board of supervisors was required to produce not less than $30 per pupil in average daily attendance, while the high school tax so levied was required to produce $60 per pupil in average daily attendance. This distinction was a reasonable basis for requiring the average daily attendance of pupils attending the seventh and eighth grades to be kept separate and credited to the elementary schools.

In 1929 the School Code was adopted and the provisions of Political Code sections 1617 and 1750a became a part of that code; were segregated into two groups, bearing different article numbers; one group dealt with pupils residing within the high school district where they attended the seventh and eighth grades, whereas the other dealt with pupils residing without such district; in the segregation the average daily attendance provision in section 1617 became a single section, i.e., 3.272; and was placed in the article dealing with pupils residing without the high school district. (See School Code, §§ 3.250-3.272, Stats. 1929.) Ten years later an identically worded average daily attendance provision became section 3.265 of the School Code and was placed in the article dealing with pupils residing within the high school district. (Stats. 1941, ch. 369, p. 1654.)

In 1943, with the adoption of the Education Code, the

former School Code sections dealing with junior high school pupils residing within a high school district, as well as those sections dealing with pupils residing without such district, were included in one group or article. Nevertheless, the two identically worded average daily attendance code provisions in the School Code were carried into the Education Code and became sections 8760(5609) and 8763(5612), being two of the code sections upon which the respondents base their contentions respecting the meaning of the term "average daily attendance" as used in the tenure statute, i.e., section 13081 (13304).

From a consideration of their legislative history, it is apparent that the foregoing code sections prescribe a method of computing the average daily attendance of pupils for elementary school districts and for high school districts as a part of their fiscal operation. This was the object of the statutes which preceded them and upon which they are based. They were not intended to define the term "average daily attendance" as used in the tenure statute.

This conclusion is supported also by a consideration of the language used in those sections, i.e.: "The average daily attendance of all pupils from a district paying the tuition provided for, enrolled in the first two years of the junior high school, shall be kept separate and *shall be credited* to the elementary school district in which the pupils reside." (Ed. Code, §§ 8760[5609] and 8763[5612].) (Emphasis added.)

Particularly noteworthy is the language directing that the average daily attendance *shall be credited* to the elementary school district which, in itself, involves a fiscal concept. It would appear that the elementary school district is to obtain some gain from the attendance of pupils in the high school for which they pay a tuition. Furthermore, it is necessary to maintain a separate attendance record for such pupils in order to provide the basis for payment of tuition by the elementary district as required by section 8755(5605) of the Education Code, as well as the basis for withholding from the apportionment of funds to an elementary school district the amount allowed for the average daily attendance of pupils residing therein, but who are being educated in the seventh and eighth grades of a junior high school, as required by section 7125.1 (17411) of that code.

Likewise, the language used in the two additional sections of the Education Code upon which the respondents rely, indicates their inapplicability to the tenure law. Section

6911(11301), which was enacted in 1947, designated the method of computing the "*units* of average daily attendance in the elementary schools of a district for a *fiscal* year," and directs that there shall be added to the computation made "the *units* of average daily attendance credited to the district on account of the education of seventh and eighth grade pupils in a junior high school . . ." (Emphasis added.) Using similar language, section 6944(11404), which also was added in 1947, requires a high school district to determine the "*units* of average daily attendance for a *fiscal* year" of its seventh and eighth grade junior high school pupils and directs that such attendance "shall be *credited* to the elementary school district in which the pupils reside." (Emphasis added.) Noteworthy is the language which refers to "units of average daily attendance" as distinguished from "average daily attendance." The tenure statute does not refer to "*units* of average daily attendance." Also of note is the reference to attendance for a *fiscal* year and the direction, similar to that contained in sections 8760(5609) and 8763(5612), that the average daily attendance shall be *credited* to the elementary school district.

The language used in the foregoing four code sections, as well as their historical background, indicate that they are an integral part of the fiscal provisions of the Education Code rather than independent expressions of general rules of law; that sections 6911(11301) and 6944(11404) are an integral part of the apportionment regulations; and that sections 8760(5609) and 8763(5612) are an integral part of the provisions governing the payment of tuition for pupils residing in an elementary school district who are attending the seventh and eighth grades maintained by a high school district.

Section 7148 of the 1943 Education Code as amended, provides that, for the purpose of Division 3 of that code, which is entitled "Financial Support of the School System," ". . . whenever computations of apportionments based on average daily attendance are made for high school districts only the attendance in all classes of grades 9 to 12, inclusive, . . . shall be included." This code section is a recognition of the fact that for purposes other than those designated, the average daily attendance of a high school district may include attendance in grades other than nine to twelve.

The first tenure provisions were adopted in 1921 (Pol. Code, § 1609 [Fifth] [e] ; Stats. 1921, ch. 878, p. 1663) ; were applicable only to districts having eight or more teachers and a

principal; were held to be constitutional (*Grigsby* v. *King,* 202 Cal. 299 [260 P. 789]) ; were extended to all districts without limitation, by an amendment enacted in 1927 (Stats. 1927, ch. 875, p. 1913) ; were incorporated in the School Code adopted in 1929 (Sch. Code, § 5.500—1929) ; and in 1931 were incorporated in a group of sections governing permanent employment of teachers which, in substance, limited the automatic acquisition of permanent status to those teachers employed by districts having 850 or more pupils in average daily attendance. The substance of the School Code provisions was carried into the Education Code and forms the basis of section 13081 (13304), which is the subject of interpretation in the case at bar.

As heretofore noted, the provisions of the Political Code authorizing the education of pupils in the seventh and eighth grades maintained by a high school district, directing the payment of tuition for these pupils by the elementary school district in which they reside and requiring their average daily attendance to be kept separate and credited to the elementary school district in which they reside, first came into being in 1915. (Pol. Code, §§ 1617d, 1750a—Stats. 1915, ch. 90, p. 113.) This was 16 years before the 850 average daily attendance limitation was added to the tenure law. Obviously, as originally enacted the average daily attendance provisions respecting seventh and eighth grade pupils had no connection with the tenure law. ■ Since that time, the legislative history of the laws respecting the education of pupils in seventh and eighth grades maintained by high school districts and the laws respecting teacher tenure have not indicated an intention that the provisions in the former should apply to the latter, or vice versa. The average daily attendance provisions expressed in sections 6911 (11301) and 6944 (11404) of the Education Code, which also declare that the average daily attendance of seventh and eighth grade pupils shall be kept separate and credited to the elementary school districts, were enacted as part of an act executing certain constitutional amendments adopted in 1946 "in order that the will of the people respecting the support of the public school system shall be given effect." (Stats. 1947, ch. 401, p. 1001, § 11.) No question of teacher tenure was involved.

■ The 1931 amendatory provisions of the tenure law which limited automatic acquisition of permanent status to teachers in districts having 850 or more pupils in average

daily attendance created a classification which "rests upon differences in the population of school districts, and upon resulting differences in the management and methods of administration in large as compared with small districts, and in the training and experience acquired by teachers in the various districts." (*Morris* v. *Board of Education*, 119 Cal. App. 750, 753 [7 P.2d 364, 8 P.2d 502].) ▮▮▮ It appears that the objective of the 850 average daily attendance limitation was to permit automatic acquisition of tenure only in those districts which, because of their size, were able to provide that type of supervision which could evaluate the qualifications of a teacher within the prescribed probationary period preceding acquisition of permanent employment status. (See *Grigsby* v. *King, supra,* 202 Cal. 299, 306.) This objective is accomplished as readily in a high school district maintaining grades seven through twelve as in one maintaining grades nine through twelve. The number of pupils and not the grade level they attend is the determining factor. It would be unreasonable to withhold the right to automatic permanent employment status from teachers in a high school district where 850 pupils were in actual daily attendance, because part of these pupils were in the seventh and eighth grades, but extend that right to teachers in an elementary school district where less than 850 pupils were in actual daily attendance, because the average daily attendance requirement was fulfilled by a credit for pupils in the seventh and eighth grades which were being taught by teachers in the high school district not entitled to the right. ▮▮▮ In *Stockton School District* v. *Wright, supra,* 134 Cal. 64, 68, the court said:

"While it is not the business of the court to make a statute, yet in the interpretation thereof it must look at the context and the result that would follow, in order to arrive at the intent. A literal construction will not always obtain, particularly when such construction leads to an absurdity."

We believe that the interpretation of section 13081 (13304) contended for by respondents would lead to an absurdity; is not within the objectives of the statute; is not supported by the legislative history of that section and the other sections relied upon by them and does not comport with the language used in those sections.

This conclusion is supported by the contemporaneous interpretation placed on the statute by those charged with its enforcement and administration. In 1936 the attorney general of this state rendered an opinion with respect to the subject

at hand. At that time both the 850 average daily attendance limitation in the tenure law and the requirement that the average daily attendance of pupils in the junior high seventh and eighth grades should be credited to the elementary school district in which they resided, had been incorporated in the School Code, being parts of sections 5.500 and 3.272 thereof, which were forerunners of sections 13081 (13304), 8760 (5609) and 8763 (5612) of the Education Code. The then Superintendent of Public Instruction requested the opinion in question and his letter of request stated that the Department of Education for years had interpreted section 3.272 of the School Code, i.e., the requirement that the seventh and eighth grade attendance in junior high schools should be credited to elementary schools, as applicable only to the apportionment of school moneys, and that in determining whether section 5.500 of that code, i.e., the automatic teacher tenure acquisition provision, applied to a high school district, the actual average daily attendance of all pupils in the schools of that district was considered and, for this reason, in determining whether the automatic tenure provisions applied to a high school district, the average daily attendance of pupils attending seventh and eighth grades of a junior high school in that district were considered as a part of the average daily attendance of the high school and not as part of the average daily attendance of the elementary school district in which they resided. In reply to this request the attorney general stated that he concurred with the views expressed by the Superintendent of Public Instruction in the foregoing letter. (Ops. Atty. Gen. No. 10677, May 8, 1936.)

The contemporaneous construction of a statute by those charged with its enforcement and interpretation, although not necessarily controlling, ''is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized.'' (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1]; *Richfield Oil Corp.* v. *Crawford,* 39 Cal.2d 729, 736 [249 P.2d 600]; *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 643 [122 P.2d 526]; *La Rue* v. *Board of Trustees,* 40 Cal.App.2d 287, 295 [104 P.2d 689].) As a contemporaneous construction, and because he was charged with the duty of rendering an opinion with respect to its meaning, the interpretation of the subject statute by the attorney general in 1936 is entitled to great respect. (*Carter* v. *Commission on Qualifications of Judicial Appointments,* 14 Cal.2d

179, 185 [93 P.2d 140]; *People* v. *Shearer,* 30 Cal. 645, 652; *Smith* v. *Municipal Court,* 167 Cal.App.2d 534, 539 [334 P.2d 931]; *People* v. *Berry,* 147 Cal.App.2d 33, 37 [304 P.2d 818]; *Hutchins* v. *County Clerk,* 140 Cal.App. 348, 349 [35 P.2d 563].)

It must be presumed that the aforesaid interpretation has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted in the course of the many enactments on the subject in the meantime. (*La Rue* v. *Board of Trustees, supra,* 40 Cal.App.2d 287, 295; *Godward* v. *Board of Trustees,* 94 Cal.App. 160, 163 [270 P. 725].) The fact that the substance of section 5.500 of the School Code has been reenacted on two different occasions since the attorney general rendered his opinion in the premises is an interpretive media which may be considered in determining the intention of the Legislature as expressed in the present section, and supports our conclusion in the premises.

The judgment is reversed with instructions to the trial court to issue peremptory writ of mandate in accord with the law and the facts in the premises and in harmony with the views expressed in this opinion.

Griffin, P. J., and Shepard, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 1, 1961.