[Civ. No. 20075.   First Dist., Div. Two.   Mar. 19, 1962.]

MALCOLM E. HARRIS, as Director of the Department of Alcoholic Beverage Control, Plaintiff and Appellant, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Defendants and Respondents.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Plaintiff and Appellant.

Leo K. Gallant, Associate Counsel, Cornish & Cornish, Francis T. Cornish and Martin, Rigney & Martin for Defendants and Respondents.

AGEE, J.—The Berkeley Women's City Club is located within one mile (about 500 feet) of the University of California, at Berkeley. Its application for a club license to sell alcoholic beverages within its premises was denied by the Department of Alcoholic Beverage Control on the ground that use of such a license would be in violation of section 172 of the Penal Code. On appeal by the club, the Alcoholic Beverage Control Appeals Board reversed the decision of the department on the ground that it had erroneously interpreted the applicable law. The department then petitioned the superior court for a writ of mandate requiring the board to set aside its decision and affirm the decision of the department.

This appeal is from the judgment and order of the superior court denying the department's petition.

Section 172 of the Penal Code provides: "Every person who, . . . within one mile of the grounds belonging to the University of California, at Berkeley, . . . sells . . . any intoxicating liquor, is guilty of a misdemeanor, . . ." This provision has been in existence since the code amendments of 1875-1876. In 1959, section 172e of the Penal Code was enacted, creating an exception to the foregoing prohibition by providing that it should not apply to the sale of liquor "within premises licensed as a bona fide public eating place" nor preclude the issuance of licenses "for bona fide public eating places" within said one-mile area.

The club has never had any type of liquor license heretofore and it is not now attempting to become licensed as "a bona fide public eating place." Its application is for a license as "a bona fide club." These two types of licenses are distinct from each other. Both are provided for in article XX, section 22, of the California Constitution, as follows: "All alcoholic beverages may be bought, sold, served, consumed and otherwise disposed of in premises which shall be licensed as provided by the Legislature. In providing for the licensing of premises, the Legislature may provide for the issuance of, among other licenses, licenses for the following types of premises where the alcoholic beverages specified in the licenses may be sold and served for consumption upon the premises: (a) For *bona fide public eating places,* as defined by the Legislature. (b) For public premises in which food shall not be sold or served as in a bona fide public eating place, but upon which premises the Legislature may permit the sale or service of food products incidental to the sale and service of alcoholic beverages. . . . (c) For public premises for the sale and service of beers alone. (d) Under such conditions as the Legislature may impose, for railroad dining or club cars, passenger ships, common carriers by air, and *bona fide clubs* . . ." (from amendments adopted November 6, 1956, and made operative on January 1, 1957; emphasis added).

The above constitutional provision thus authorizes the Legislature to provide for the issuance of licenses for various "types of premises," among which are specified "bona fide public eating places," "bona fide clubs," and "public premises."

The three types of premises are defined by the Legislature in the Alcoholic Beverage Control Act[1] (Bus. & Prof. Code, §§ 23000 et seq.) Section 23038 defines "bona fide public eating place"; section 23039 defines "public premises"; and section 23037 defines "club."

The applicant is a well-established nonprofit social club having a membership of about 1,600 adult female members. It is well equipped to and does prepare and serve daily a substantial number of meals to its members and their guests. The club is not open to the public and its facilities are not available to the public. It is open only to members and their invited guests. It was found by the department to qualify as a "bona fide club" within the meaning of the Constitution and section 23037.

Further implementing the constitutional provision for the licensing of bona fide clubs, sections 23425 to 23428.9, inclusive, enumerate in this category certain fraternal organizations, golf clubs, swimming and tennis clubs, yacht clubs, bar associations, county medical associations, rod and gun clubs, press clubs, horse riding clubs, parlors of Native Sons, and nonprofit social clubs. Section 23430 permits the department to issue "one club license" to any of the clubs just named.

The Legislature again demonstrates its recognition of a bona fide club as a distinct type of licensee when providing for the annual fees of each type of license. Section 23320 provides: "The following are the types of licenses to be issued under this division [Alcoholic Beverage Control Act] and the annual fees to be charged therefor: . . . (27) On-sale general license: In cities of 40,000 population or over [$]580.00 per year . . . (29) (a) On-sale general license *for bona fide clubs*, . . . [$]330.00 per year." (Renumbered in 1961 as (28) and (30)(a), respectively; emphasis added.)

Of greater importance in the instant case than the difference in licensing fees is, of course, the foregoing provision that "[t]he following are the *types of licenses* to be issued . . ." (emphasis added). It clearly demonstrates the intent of the Legislature to keep clubs separate and apart from "public eating places" and "public premises" to which on-sale general licenses may be issued.

Another distinction is made with reference to the transferability of licenses. Section 24070.1 provides that an "on-sale

[1]All section references herein are to the Business and Professions Code unless otherwise indicated.

license issued for a bona fide public eating place may be transferred . . . An on-sale license issued for public premises may be transferred . . ." On the other hand, section 23431 provides that a "club license is not transferable . . ."

Again we find another recognition by the Legislature of its awareness of the distinction. Section 23787 requires that an on-sale license cannot be issued to a bona fide public eating place unless it is ". . . maintained in good faith for sales to and consumption by the *public* of meals upon the premises." Whereas, section 23431 provides that the holder of a club license ". . . may sell and serve alcoholic beverages for consumption within the licensed establishment *only* to bona fide members of the club and their bona fide guests." (Emphasis added.)

It seems clear that the Legislature has consistently been mindful of the distinction between the terms "bona fide public eating places" and "bona fide clubs," as those terms are used in the Constitution, and that it has always maintained this distinction throughout the provisions of the Alcoholic Beverage Control Act.

So that, in 1959, when the Legislature created an exception to section 172 of the Penal Code by enacting section 172e thereof, it must have intended exactly what the section says, that the exception be restricted to "premises licensed as a bona fide public eating place."

To contend otherwise is to say in effect that the intent of the Legislature, in enacting section 172e of the Penal Code, was to add by implication the words hereafter italicized: "The provisions of Sections 172, 172a, 172b, and 172d of this code shall not apply to the sale . . . of alcoholic beverages by an on-sale licensee under the Alcoholic Beverage Control Act within premises licensed as a bona fide public eating place *or within premises licensed as a bona fide club* as provided in the Constitution and as defined in the Alcoholic Beverage Control Act . . . , and the provisions of such sections shall not be construed so as to preclude the Department of Alcoholic Beverage Control from issuing licenses for bona fide public eating places *or bona fide clubs* within the areas prescribed by the sections."

An exception to a statute is to be narrowly construed. (*Corey* v. *Knight*, 150 Cal.App.2d 671, 680 [310 P.2d 673].) When a statute specifies an exception, no others may be added under the guise of judicial construction. (*In re De Neef*,

42 Cal.App.2d 691, 694 [109 P.2d 741]; *Estate of Pardue,* 22 Cal.App.2d 178, 181 [70 P.2d 678].)

The appeals board, in its decision, says that section 23038 "controls appellant's [the club's] fate in this matter; . . ." This section defines a "bona fide eating place." The board points out that the club is equipped to prepare and serve meals and is "kept open for the serving of meals to guests for compensation," as provided in that section; that ". . . the failure to [expressly] exclude bona fide clubs from the provisions of Section 23038 indicates a legislative intention that bona fide clubs could qualify within the defined meaning of a bona fide public eating place."

We think the board has incorrectly interpreted the scope of the word "guests," which is defined in the same section as follows: " 'Guests' shall mean persons who, during the hours when meals are regularly served therein, come to a bona fide public eating place for the purpose of obtaining, and actually order and obtain at such time, in good faith, a meal therein."

■ However, a person who went to the club and ordered a meal would not obtain it unless such person was a member or an invited guest of a member. The club expressly admits this. Therefore, it can hardly be said that the club is "kept open for the serving of meals to guests for compensation" as the word "guests" is meant and defined in the section. It seems clear that the word is used in the same sense as "guests" of a hotel, inn or restaurant, to the use of which establishments all citizens are entitled. (Civ. Code, § 51.)

■ Even assuming that a club could qualify under the definition of a bona fide public eating place, it still could not avail itself of the exception allowed by section 172e of the Penal Code unless its premises were "*licensed* as a bona fide public eating place." In other words, the applicability of this section is not made to depend upon whether an establishment, which is seeking another type of license, may come within the description used in defining a "public eating place," i.e., whether an applicant for a different type of license may be said to "qualify" under such definition. The section, by its very terms, applies only to those establishments which are or which are seeking to be licensed *as a bona fide public eating place.*

Reference is made to the policy or objective of the Legislature in drafting section 172e of the Penal Code. We are not concerned with this in this instance. The applicant is

no doubt a highly respectable organization. Perhaps other applicants may be the same. But it may be noted that the Attorney General has stated: "There is public policy consideration likewise involved in this general problem. It has been pointed out by people engaged in law enforcement duties that it is almost impossible to police establishments which restrict entrance to their premises. . . . Thus, effective law enforcement by both the Department of Alcoholic Beverage Control and local law enforcement personnel would be, at the very least, seriously hampered." (35 Ops. Cal. Atty. Gen. 93, 102.)

The judgment is reversed with instructions to the court below to issue a peremptory writ of mandate ordering the Alcoholic Beverage Control Appeals Board to set aside and annul its decision and enter its order affirming the decision of the Department of Alcoholic Beverage Control.

Kaufman, P. J., and Shoemaker, J., concurred.

Petitions for a rehearing were denied April 3, 1962, and April 4, 1962, and respondents' petitions for a hearing by the Supreme Court were denied May 16, 1962. Schauer, J., and Peters, J., were of the opinion that a hearing should be granted.