[Civ. No. 22169.    First Dist., Div. Three.    Oct. 20, 1965.]

CALIFORNIA STATE EMPLOYEES ASSOCIATION, Plaintiff and Appellant, v. TRUSTEES OF THE CALIFORNIA STATE COLLEGES et al., Defendants and Respondents.

Richard H. Perry for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Palmer and Richard L. Mayers, Deputy Attorneys General, for Defendants and Respondents.

DEVINE, J.—There are two problems in this case: (1) Are nonacademic employees of state colleges excepted from civil service? Appellant association, on behalf of some of these employees, says no; the Attorney General, speaking for respondents, the trustees, the State Personnel Board and other officers, says yes. (2) Was it unconstitutional for the Legislature to transfer the functions of a division of the State Department of Education, theretofore within civil service, to persons excepted from civil service?

*Nonacademic Employees of State Colleges
and Civil Service*

The Donahoe Act of Higher Education (Stats. 1961, First Ex. Sess. 1960, ch. 49, p. 392) completely sets nonacademic employees apart from the Civil Service System (but sets up a plan for their tenure, removal and similar conditions). Appellant challenges the constitutionality of that part of the act which provides for exclusion of these employees from the Civil Service System (Ed. Code, § 22607) on the ground that the persons involved are not employed by any state normal school or teachers college. But appellant goes much farther and contends that these employees have been subject to civil service as a matter of law since 1921, although their true status has never been recognized in practice.

Article XXIV, section 4, subdivision (a) of the Constitution of California places under civil service every officer and employee of the state except 16 classes. Among the exemptions are "Persons employed by any state normal school or teachers college" (subd. (a)(8)). The exemptions are not absolute; the Legislature may but need not place persons who are within many excepted classes, including those in subdivision (a)(8), under civil service. Whenever the Legislature does this, it may not revive the exemption (art. XXIV, § 4, subd. (b)).

Appellant's pleading prays for injunction and mandamus requiring respondents to establish classifications, to hold competitive examinations, and to effect all of the civil service requirements. Demurrer on the ground that the complaint does not state a cause of action was sustained without leave, and judgment of dismissal followed, from which this appeal is taken.

*The Constitutional Exemption and the 1921 Statutes*

Normal schools were established for the education of teachers (the term "normal school" is taken from the French *"école normale,"* which designated a model for other teacher training schools), commencing with the one at San Jose in 1857. By 1913, when the normal school at Arcata was established, there were some seven or eight throughout the state. Each of these had its own board of trustees, appointed by the Governor with the concurrence of the Senate. Each board made contracts of employment with its staff. In 1903, a joint board of trustees was set up by section 1492 of the Political Code (Stats. 1903, p. 161) to effect certain uniform practices, but the schools were still autonomous in respect of employ-

ment. In 1921, major revision took place. The name of the schools was changed (Pol. Code, § 354; Stats. 1921, p. 715) so that they were no longer to be known as state normal schools but as state teachers colleges. The schools were placed under the management of the State Department of Education. The old boards of trustees were abolished and a division of normal and special schools was created to take over generally the trustees' functions (Pol. Code, § 362a; Stats. 1921, p. 1034). The teaching staff and all employees were to be employed by the Director of Education, but officers and employees were to serve their terms or contracts of employment unless removed for cause. The object of the schools was declared to be the education of teachers for the public schools (Pol. Code, § 1487; Stats. 1921, p. 716), but the schools were empowered to grant the baccalaureate degree when authorized to do so by the State Board of Education (Pol. Code, § 1489; Stats. 1921, p. 716).

It is appellant's contention that the 1921 change made it impossible for anyone thereafter to be employed *"by* a state normal school or teachers college,'' because employment of everyone engaged in the work of these schools must be made, from that time, *by* the Director of Education. This contention is put by appellant into two categories: the first, that there is no room for construction, the exemption contained in subdivision (a)(8) being perfectly clear, and the application of it equally without doubt; the second, that if interpretation be required, that which is proposed by appellant should be accepted. We do not regard the 1921 change as an unequivocal removal of the employees from the constitutional exception. The constitutional exemption is susceptible of the construction that employees might still be employed *by* state normal schools or teachers colleges, although their contracts were made through the agency of the Director of Education. A person generally is considered employed by the institution for which he works.

Rejecting, therefore, the proposition that the 1921 statute necessarily destroyed the exemption contained in subdivision (a)(8), section 4, article XXIV of the Constitution, we turn to the process of interpretation. Appellant contends that exemptions contained in the Constitution are to be construed strictly. Appellant cites *Corey* v. *Knight,* 150 Cal.App.2d 671 [310 P.2d 673], and *Harris* v. *Alcoholic Beverage Control Appeals Board,* 201 Cal.App.2d 567 [20 Cal.Rptr. 227]. These cases do, indeed, state the rule that exceptions to a class which

is established by statute (and, presumably, by a constitution) are to be narrowly construed; but in each of them the court held no more than that exceptions are not to be created by adding classes through judicial construction. The cases are different from that before us in that the excepted class is established by the Constitution, and the judicial construction for which appellant contends would cause a narrowing of the class by statute. Appellant argues that there ''are no unusual or highly technical qualifications specially required by non-teaching employees of the Trustees of the California State Colleges beyond identical requirements for classes already performing like services—clerical, stenographic, filing, maintenance, etc.—in all other departments of the State of California.'' But this proposition would have had the same weight at the time of the creation of the constitutional exemption in 1934 (art. XXIV, § 4, subd. (a) (8)) and, nevertheless, the exemption was proposed by initiative process and ratified by the voters. Presumably, the argument could be made as to the nonteaching employees of the University of California, who have always been exempt from civil service (Const., art. XXIV, § 4, subd. (a) (7)). ▮ Whether it is better administrative practice to have all of the employees of institutions of higher learning under the authority of the governing bodies of these institutions, or to place nonteaching employees within civil service, is for the Legislature, and not for the courts, to decide.

Appellant cites the cases of *State Comp. Ins. Fund* v. *Riley*, 9 Cal.2d 126 [69 P.2d 985, 111 A.L.R. 1503], and *Stockburger* v. *Riley*, 21 Cal.App.2d 165 [68 P.2d 741], for the proposition that civil service is the norm and exemption the exception, and that the exceptions were expected to be temporary only. But the *State Fund* case is one in which a clear violation of the constitutional civil service requirement was attempted by the employment of a private attorney, which would have been, in effect, the adding of a completely new class of exemption. In the *Stockburger* case, it was held that maintenance work for state buildings, which prior to the constitutional amendment had been done by state employees who were made part of the Civil Service System, could not be delegated to other persons by engaging an independent contractor to do the work. In neither of these cases were the ''employees'' subject to any exemption created by the constitutional section. The reference in the *State Fund* case to the exemptions as being intended to be temporary is not to be found in the

court's own language, but in a quotation from the argument to the voters when the amendment was put before them (9 Cal.2d at p. 134); and, anyway, the determination of the time and conditions under which excepted classes may be brought under civil service is specifically delegated to the Legislature.

We conclude that there is nothing compelling in the arguments advanced by appellant, and we proceed to consider what may be weighed in the scales against appellant's proposition.

In the first place, it is to be observed that the constitutional amendment containing the exemption (art. XXIV, § 4, subd. (a)(8)) was enacted in 1934, some 13 years *after* the teachers colleges had been placed under the State Department of Education. What, then, was the meaning of the exemption if there were no persons employed by the colleges in 1934, and if there had not been such employees since 1921? Was the exemption meaningless from the beginning? Appellant answers that the exemption was simply copied from the earlier Civil Service Acts (Stats. 1919, ch. 654, p. 1343; Stats. 1913, ch. 590, p. 1040), when the employees were engaged by the local boards which governed the normal schools. We shall not assume, however, that the constitutional section (art. XXIV, § 4, subd. (a)(8)) was totally useless from the moment of its adoption. Nor does appellant do so. Appellant says that, although the exemption contained in the Constitution was, from the beginning, without "prospective vitality or effect," it did for some time have this effect: it dispensed from civil service those employees who had been engaged by the local boards which conducted normal schools prior to 1921. But if exemption for so limited and diminishing a number of employees (if, indeed, there were any whose contracts of employment went back as far as 1921),[1] it would seem that the exception would have been made specific by words such as "persons who were employed prior to July 30, 1921,[2] by any state normal school or teachers college." The very words of this particular exemption produce the impression of continued

---

[1] If local boards had authority, prior to 1921, to employ for periods as long as 13 years, it would seem unlikely that they would do so. But apparently no statute limited the term until 1921, when Political Code section 1489 made four years the maximum. We have taken it as a fact, for the decision of the case, that there were pre-1921 employees whose contracts existed in 1934.

[2] This is the date on which the 1921 statute went into effect.

and prospective effectiveness. All of the other exemptions plainly have a prospective operation, and it is likely the draftsmen of the amendment would have made the distinction contended for by appellant if such distinction had been intended by them. Particularly does this seem probable because of this consideration: if the 1921 statute had removed the exemption then existing by the Civil Service Act, all of the persons employed between July 30, 1921, and the date of the constitutional amendment some 13 years later, would have been within civil service legally; but, actually, they were not considered so by the administrators. The authors of the amendment no doubt knew the fact that the exemption was being recognized administratively, and if they wished to remove it, except as to whatever number of pre-1921 employees remained, surely they would have spelled this out.

It is important to consider the interpretation placed on the civil service amendment to the Constitution, following its adoption in 1934, by agencies of government which would be concerned with it. ▮ The Legislature has had the power continuously since 1934 by article XXIV, and had it earlier inherently, to place the employees of the colleges within civil service. Surely, if the Legislature had interpreted the article of the Constitution, or its own prior legislation, as requiring, since 1921, that the employees be subject to civil service, it would have taken appropriate action. The Legislature must be deemed to have known of the opinions of the Attorney General, which are referred to below. (*Corey* v. *Knight,* 150 Cal.App.2d 671 [310 P.2d 673].) It is to be presumed also that the Legislature had full knowledge of the construction which had been placed upon the relevant statutes by all of the agencies which had to do with the administration of the colleges; yet there was no modification of the legislation which would require a contrary interpretation.[3] (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 922 [156 P.2d 1].) If the Legislature had deemed itself bound by the Constitution to place the employees in question under civil service,

---

[3] We note, but are not impressed by, appellant's argument that at times the Legislature has used expressions like ''any employee of such State college not serving in the State civil service'' (for example, in section 5.45 of the former School Code (Stats. 1941, ch. 721, p. 2238), providing for leaves of absence), and that this shows a recognition that there are employees who *are* in civil service. The references are tangential. If the Legislature had understood that the Constitution required the nonteaching staffs to be in civil service, it would have acted directly.

no doubt it would have done so. (*Town of Los Gatos* v. *Sund,* 234 Cal.App.2d 24, 26 [44 Cal.Rptr. 181].) Indeed, as late as 1965 the Legislature allowed bills, which were designed to put the nonacademic employees within civil service, to die in committee.

The opinions of the Attorney General are entitled to much weight. (*Smith* v. *Municipal Court,* 167 Cal.App.2d 534, 539 [334 P.2d 931]; *Meyer* v. *Board of Trustees,* 195 Cal.App.2d 420, 431 [15 Cal.Rptr. 717].) The Attorney General has ruled consistently that all of the employees of normal schools, teachers colleges and state colleges are exempt from civil service. (Op. 9931 (1935); Op. NS 928 (1938); Op. NS 2568 (1940); 1 Ops. Cal.Atty.Gen. 184 (1943); 37 Ops. Cal.Atty.Gen. 69 (1961).)

The construction placed on the article by responsible agents of government concerned with its administration, having been not only contemporaneous with the article's early existence but also of long duration, is to be regarded highly by the court. (*Meyer* v. *Board of Trustees, supra,* 195 Cal.App.2d 420, 431; *Broadway-Locust Co.* v. *Industrial Acc. Com.,* 92 Cal.App.2d 287, 293 [206 P.2d 856]; *Universal Engineering Co.* v. *State Board of Equalization,* 118 Cal.App.2d 36 [256 P.2d 1059].)

### *The Constitutional Exemption and the Donahoe Act*

It is convenient to discuss the Donahoe Act separately at this point, although several of the considerations stated above are applicable here and some of the discussion here would be relevant above. In the act, which followed the elaborate studies of the Master Plan for Higher Education, particular attention was given to the state colleges. They had been named so since 1935. In 1963 the enrollment was more than 120,000, so that they had become the largest system of public higher education in the western hemisphere. (Cal. Blue Book (1963) p. 247.) The act created the Trustees of the California State Colleges as the governing body of all California state colleges, and transferred to the trustees all of the powers, duties and functions with respect to the management, administration and control of the state colleges which previously had been vested in the State Board of Education and the Director of Education. (Ed. Code, § 22604.) The trustees were given power to grant the doctoral degree, but only when acting with the Regents of the University of California.

Appellant contends that the state colleges have so far departed in scope and purpose from the colleges which existed

in 1934 as to have lost the exemption declared in article XXIV, section 4, subdivision (a) (8) ; but respondents reply that the state colleges are the statutory successors of the exempted colleges. We agree with respondents. It cannot be gainsaid that the institutions have grown enormously, as what has not? and that their curricula are vastly expanded, and that their organization is much more centralized. But they do educate teachers, together with aspirants to other vocations. (Ed. Code, § 22606.) But more than this, the colleges are part of the prized system of higher education. The exemption from civil service, it would appear, is not made because *teachers* were and are educated in these institutions of advanced learning, but because *people* were and are provided with higher education in these colleges, and because it has been thought that the whole system should be in control of persons responsible for proficiency in education. The exemption has to do with the function of education, rather than with any particular profession for which the students may be trained. This appears from the cognate exemption, contained in the next preceding subdivision of the article in the Constitution, of all employees of the University of California. By this we do not mean to say that exception from civil service could be created by the Legislature for any possible system of higher education, unrelated historically to the teachers colleges, but that the exception, constitutionally granted, should not be deemed lost merely because the functions of the teachers colleges have been greatly enlarged and the colleges' title has been changed.

The point is made by appellant that by section 24204 of the Education Code (enacted in 1959), and by its predecessor, section 20373, transfer of the nonacademic employees to civil service already has been made, and that the transfer is irreversible under the civil service article of the Constitution. The statute authorizes the State Personnel Board to adjust salaries of employees of state colleges in the same manner as other civil service salaries are adjusted. Appellant argues that the Constitution vests in the State Personnel Board no power other than that of administering state civil service. When, therefore, appellant argues, a partial application of the elements of civil service is attempted for a class of employees, an entire transfer of the class, even though it were previously exempted, is brought about.

There is no authority for the proposition that the Legis-

lature may not direct the personnel board to perform duties helpful to agencies of government which are not presently within civil service. ██ The board is granted power by statute to make its services available to state agencies excepted from civil service. (Gov. Code, § 18707.) ██ Moreover, we have no doubt that where the Constitution expressly permits the Legislature to place employees, theretofore exempt, into civil service, it means a deliberate and direct transfer, and not an unintended transfer deducible only by enlarging by inference the effect of one act of the Legislature to another, far greater.

Finally, we find it impossible to understand how the requirement of civil service could be applied to the nonteaching employees only. The exemption refers to ''persons employed by any state normal school or teachers college.'' If this exemption has been lost, has it not been lost for all? Such a result, we take it, would be, if not ruinous to the colleges, at least completely out of line with principles of education. Appellant answers that the exemption of the academic staff derives, not from section 4, subdivision (a)(8) of article XXIV, but from section 4, subdivision (a)(9), which exempts ''The teaching staff of all schools under the direction or jurisdiction of the Superintendent of Public Instruction, the Department of Education or the director thereof or the State Board of Education. . . .'' ██ But the state colleges are not under the direction or instruction of the named officials; since 1960, they have been under the jurisdiction and direction of the trustees. It seems inescapable that if the exemption does not exist for nonacademic employees, it does not exist for faculty members. Appellant says that if this is so, the result must be accepted; let the teachers be subject to civil service, as many other persons in the professions are. But we find in the whole of article XXIV the expressed will of the people that professors and teachers shall not be within civil service, and it would require most compelling argument to bring about by indirect means a result so unsettling and so plainly unwanted by all.

██ The Legislature no doubt understood when passing the Donahoe Act that the exemption from civil service of the teaching staffs was based on article XXIV, section 4, subdivision (a)(8), which has particular reference to normal schools and state teachers colleges, and not to the more general section (art. XXIV, § 4, subd. (a)(9)) which relates to all schools

under the Director of Education. Long accepted practice and tradition would justify this understanding.

### Transfer of Functions of the Division of State Colleges and Teacher Education

Appellant's second point in this case is that even if the nonacademic employees of the colleges be deemed excepted from civil service, the Donahoe Act is unconstitutional in so far as it does away with the Division of State Colleges and Teacher Education of the State Department of Education, whose employees were within civil service, and places all the functions theretofore performed by the division under persons employed by the trustees.

The division was created in 1921 (Pol. Code, § 362a; Stats. 1921, p. 1034) for the purpose of central administration, and remained until its abolition by the Donahoe Act. It was in charge of the Director of Education, and was in civil service. But all of the on-campus employees, academic and nonacademic, were appointed by the director subject to the approval of the State Board of Education only upon recommendation of the president of the college. (Stats. 1959, ch. 2, p. 1405.) When the administrative unit for all of the colleges, the division, was terminated by the Donahoe Act, and its functions were put under the trustees, some of its employees were engaged by the trustees. They had to give up civil service status, but they received certain personnel rights and benefits by statute. (Ed. Code, § 22607.) Others were not so employed, but they retained their civil service status by express statutory provision (Ed. Code, § 22607) which would apply in other state employment.

Is there anything in the Constitution to make void the action of the Legislature? Article XXIV provides that no exception shall be revived with respect to any person or group of persons heretofore or hereafter included in the state civil service. But the persons in the division never were employed by the state colleges, as were on-campus employees, both teaching and nonacademic. They were employed by the department. Their civil service status has not been taken from them but expressly preserved by section 22607 of the Education Code. We find nothing which forbids the transfer of functions to the trustees in the interest, as we assume it to be, because the Legislature has made the change (and there is no allegation of bad faith on anyone's part) of more efficient

and responsible administration of the state colleges under the comprehensive new plan.

It is argued by appellant that civil service could be ruined if the Legislature were to consign functions of any division of the department to the trustees; but the Legislature has removed only functions which are appropriate to the trustees, and we cannot hold this to be unconstitutional on the ground that some other act, which may never be passed, might present a dissimilar question in a wholly different case.

It is argued by appellant that there is an analogy which prevents the transfer of functions to be drawn from *Stockton* v. *Department of Employment*, 25 Cal.2d 264 [153 P.2d 741]. It was held in the *Stockton* case that a department could not effect lay-off of a civil service employee merely by transfer of his functions to another employee. But the decision was based on interpretation and application of the Civil Service Act. ██ In the case before us, the transfer is plainly directed by act of the Legislature and could be declared void only if the statute were in conflict with the Constitution. We hold that it is not.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 15, 1965.