[Civ. No. 8780.    Fourth Dist., Div. One.    Mar. 14, 1968.]

SCOTT-MEMORIAL BAPTIST CHURCH et al., Plaintiffs and Appellants, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and Respondent.

William R. Richards for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Stephen H. Silver, Deputy Attorney General, for Defendant and Respondent.

BROWN (Gerald), P. J.—Declaratory relief plaintiffs Scott-Memorial Baptist Church and College Avenue Baptist Church appeal from a judgment deciding, under Penal Code,

section 172h, that Penal Code, sections 172 through 172g do not prohibit defendant Department of Alcoholic Beverage Control from issuing liquor licenses to premises within one and one-half miles of San Diego State College.

San Diego State College's enrollment exceeded 10,000 students before January 1, 1960, and has continued to grow; before September 12, 1960, less than 500 students resided on the college's campus; since September 12, 1960, more than 500 students have resided and reside on the campus. In 1965, defendant issued a liquor license to a premises within one and one-half miles of the college boundaries.

Penal Code, section 172a, in substance, makes it a misdemeanor to sell liquor within one and one-half miles of any university having an enrollment of more than 1,000 students, more than 500 of whom reside on campus. Penal Code, section 172h, in substance, exempts from the operation of Penal Code, section 172a, any premises which is in or becomes part of a prohibited area because a university has constructed and occupied since January 1, 1960, or in the future constructs dormitories for its students. For purposes here, San Diego State College is treated as a university (Pen. Code, § 172.9). Plaintiffs interpret section 172h as follows: As universities construct and occupy new dormitories, geographical campus boundaries may expand; section 172h exempts premises which become within one and one-half miles of a campus as a result of campus expansion toward the premises. Defendant interprets section 172h as follows: As universities construct and occupy new dormitories, more universities will enroll over 1,000 students, more than 500 of whom reside on campus; section 172h exempts premises which become within one and one-half miles of a campus with over 1,000 students, more than 500 of whom reside on campus as a result of resident or general enrollment growth.

Logically, plaintiffs' and defendant's interpretations are not inconsistent. Perhaps the Legislature determined enrollment increases or geographic expansion or both should not create new nor expand existing one and one-half mile dry zones. ██ San Diego State College, however, grew in resident enrollment, not in geography, and, therefore, on the facts here the issue is whether section 172h exempts premises within one and one-half miles of San Diego State College

because the college had less than 500 students residing on its campus on and before January 1, 1960.

The Attorney General submitted to the trial court the following certification by the Director of the Department of Alcoholic Beverage Control:

"This is to certify that the Department of Alcoholic Beverage Control of the State of California, contemporaneously with the enactment of section 172(h) of the Penal Code on September 17, 1965 (Stats. 1965, p. 3194), and continuously thereafter, has adopted the interpretation that section 172(h) was an expression of legislative intent to limit the prohibition of sections 172 through 172(g) to universities named specifically therein and those universities not specifically named but which had an enrollment in excess of 1,000 students, more than 500 of whom resided or lodged upon the university grounds or campus on or prior to January 1, 1960; consequently, section 172(h) would apply so as to cause the provisions of sections 172 through 172(g) to be inapplicable to any university which did not have 500 or more students living on campus as of January 1, 1960, or at any time prior thereto, . . . ."

The department's interpretation is entitled to great weight, and will be rejected only if shown to be clearly erroneous (*Union Oil Co.* v. *State Board of Equalization,* 60 Cal.2d 441, 456 [34 Cal.Rptr. 872, 386 P.2d 496] ; *California State Emp. Assn.* v. *Trustees of Cal. State Colleges,* 237 Cal.App.2d 530, 536-537 [47 Cal.Rptr. 73] ; see *Joseph George, Distributor* v. *Department of Alcoholic etc. Control,* 149 Cal.App.2d 702, 710 [308 P.2d 773] ). Plaintiffs have not shown the department's interpretation to be erroneous.

Plaintiffs devote their argument to trying to prove their geographic theory without recognizing that any proof of such does not disprove defendant's enrollment theory. Plaintiffs argue their theory is correct because it protects the established liquor licensee who finds a college campus extending toward him. Plaintiff's ignore defendant's theory's protection of established and future liquor licensees who find a nearby college's resident enrollment increasing. If, as plaintiffs' argument suggests, section 172h was enacted to protect liquor licensees by stopping the spread of dry zones, defendant's interpretation equally serves the legislative purpose, and should control here.

Plaintiffs and defendant recite section 172h was the answer to a problem at San Jose State College. Plaintiffs say San Jose State College is in downtown San Jose. Plaintiffs do not say whether geographic expansion or increased enrollment caused the problem. The Attorney General submits a letter from the San Jose State College Housing Director stating resident enrollment reached a figure above 500 for the first time in September 1960. This document substantiates defendant's theory. Plaintiffs answer section 172h, meant for San Jose State College, must be limited in application to that college. Significantly, however, section 172h speaks generally, and not solely with regard to any particular university.

Judgment affirmed.

Coughlin, J., and Whelan, J., concurred.