TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

| | |
|---|---|
| OPINION | : |
| | : |
| of | : |
| | : |
| JOHN K. VAN DE KAMP | :    No. 87-303 |
| Attorney General | : |
| | :    <u>JUNE 4, 1987</u> |
| RODNEY O. LILYQUIST | : |
| Deputy Attorney General | : |

------------------------------------------------------------

THE STATE PERSONNEL BOARD has requested an opinion on the following question:

Are the officers in the "student affairs officer class series" at the California Maritime Academy included in the state civil service system?

CONCLUSION

The officers in the "student affairs officer class series" at the California Maritime Academy are included in the state civil service system.

ANALYSIS

The California Maritime Academy is a state institution within the Department of Education (Ed. Code, § 70010)[1] and has as its purpose "to provide instruction on the nautical sciences, marine engineering, and related fields" (§ 70000). It is a four-year, accredited, post-secondary institution governed by a board of governors and located on San Francisco Bay. (See §§ 70000-70001; 70010, 70020, 70021, 70034.)

The question presented for analysis concerns persons at the academy having employment positions in the "student affairs officer class series." Are these officers subject to the state civil service system, or are they exempt from the system? The duties of the officers are

_____

[1]All references hereafter to the Education Code are by section number only.

limited to providing recruitment, admissions, registration, financial aid, career placement, and counseling services at the academy. The officers are not part of the faculty giving instruction to the students in the curriculum of the academy. We conclude that the officers are within the state civil service system as required by the Constitution and Government Code section 18598.

The Legislature has given to the academy's board of governors the authority to "provide, maintain, manage, and control" the academy (§ 70020), and the board has the specific power to "[a]ppoint, and may remove, a superintendent of the school and all necessary instructors and other employees" and to "[d]etermine the powers, duties, and compensation of the superintendent, instructors, and employees" (§ 70021, subds. (a), (b)). [2]

Pursuant to this grant of authority, the board of governors has adopted a regulation (Cal. Admin. Code, tit. 5, § 60001, subd. (d)) defining its "instructional staff" as follows:

> "(1) The faculty of the Academy, which faculty shall consist of persons qualified to give instruction in authorized curriculum and who shall report to the Academic Dean or the Commanding Officer of the Training Ship; and

> "(2) Academic Employees who are qualified to give instruction in the professional development of the midshipmen and who shall report to the Commandant of Midshipmen; and

> "(3) Academic employees in very closely related professional activities such as administrative assistant to the president, financial aid, admissions, counseling, placement, recruiting and director of adult maritime education.

> "The classes of civil service exempt positions whose incumbents may be eligible for inclusion in one of these categories will be determined by the President." (Emphases added.)

It has also by regulation (Cal. Admin. Code, tit. 5, § 60002, subd. (e)) prescribed the duties of its

---

[2]The Legislature has also directed the Department of Personnel Administration to "establish and adjust the salaries of the superintendent, members of the teaching staff, officers and employees of the California Maritime Academy in the same manner and following the same procedures as in the establishment and adjustment of state civil service salaries." (§ 70031, subd. (a).) The State Personnel Board is directed to "establish and adjust the classifications of the superintendent, members of the teaching staff and officers and employees of the California Maritime Academy in the same manner and following the same procedures as in the establishment and adjustment of state civil service classifications." (§ 70031.1.)

"academic employees" as follows:

"(1) Academic Employees reporting to the Academic Dean or Commanding Officer of the Training Ship shall be appointed by the President, upon the recommendation of the Dean or the Commanding Officer of the Training Ship and shall have primary responsibility for the following instructional duties:

"(A) To educate each midshipman in an accredited college program in Nautical Industrial Technology, Marine Engineering Technology and related fields; and

"(B) To train each midshipman in the skills and knowledge essential to licensing in the United States Merchant Marine.

"(2) Academic Employees reporting to the Commandant of Midshipmen shall be appointed by the President, upon the recommendation of the Commandant of Midshipmen and shall have primary responsibility for the following instructional duties:

"(A) To develop in each midshipman a strong sense of duty, honor and service to country and instill in him a pride in his profession; and

"(B) To develop in each midshipman a sound body and the physical attributes necessary to meet successfully the rigors of the sea.

"(3) Academic employees in very closely related professional activities shall be appointed by the President upon the recommendation of the executive assistant to whom the designated position reports, and shall have primary responsibility for the following instructional duties: (a) Administrative Assistant. The Administrative Assistant, under the direction of the President, shall perform administrative duties including those related to instructional activities. (b) Financial Aid Officer. The Financial Aid Officer, under the direction of the Administrative Officer, shall provide financial aid services for all midshipmen. (c) Admissions and Recruiting Officer. The Admissions and Recruiting Officer, under the direction of the Administrative Officer, shall provide admissions services for the midshipmen and recruiting services for the Academy. (d) Registrar. The Registrar, under the direction of the Administrative Officer, shall provide registration and records services for all midshipmen. (e) Placement Officer. The Placement Officer, under the direction of the Administrative Officer, shall provide placement services for all midshipmen and graduates. (f) Director of Adult Maritime Education. The Director of Adult Maritime Education, under the general direction of the Academic Dean, shall plan, organize

and supervise the adult maritime education program. (g) Additional employees. Additional assignments in this category shall be made by the President and in each such assignment the duties shall be established by the President. It is recognized that more than one assignment may be held by one person.

"All academic employees in this category shall assist each midshipman to utilize effectively and receive maximum benefits from available academic and closely related professional services and will instill in each midshipman an awareness of and a commitment to individual responsibility." (Emphases added.)

The regulations of the board of governors define the persons in the student affairs officer class series as part of the "instructional staff" and as "academic employees" exempt from state civil service. (Cal. Admin. Code, tit. 5, § 60004.)

It is well-recognized that "the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight. . . ." (Morris v. Williams (1967) Cal.2d 733, 748; accord Association for Retarded Citizens v. Department of Developmental Services (1985) 38 Cal.3d 384, 391.) As stated by the Supreme Court in Ontario Community Foundations, Inc. v. State Bd. of Equalization (1984) 35 Cal.3d 811, 816:

"In determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body. [Citations.]"

On the other hand, "Where a statute empowers an administrative agency to adopt regulations, such regulations 'must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose.'" (Woods v. Superior Court (1981) 28 Cal.3d 668, 679; see Gov. Code, § 11342.2.) Administrative regulations that "alter or amend the statute or enlarge or impair its scope are void. . . ." (Morris v. Williams, supra, 67 Cal.2d 733, 748; accord Ontario Community Foundations, Inc. v. State Bd. of Equalization, supra, 35 Cal.3d 811, 816-817.) A regulation is invalid not only when "in conflict with the statute which created the agency or which the agency is authorized to administer" but also where it "contravenes a provision of a different statute." (Agricultural Labor Relations Bd. v. Superior Court (1976) 16 Cal.3d 392, 420.) "'It is fundamental that an administrative agency may not usurp the legislative function, no matter how altruistic its motives are.'" (Id. at p. 419.)

The state civil service system was instituted in 1934 by means of a constitutional amendment. The primary provision defining the system is now found in subdivision (a) of section 1 of article VII of the Constitution: "The civil service includes every officer and employee of the state except as otherwise provided in this constitution." As stated in the ballot

pamphlet at the time the constitutional amendment was adopted:

"The purpose of this constitutional amendment is to promote efficiency and economy in State government. The sole aim of the act is to prohibit appointments and promotion in State service except on the basis of merit, efficiency and fitness ascertained by competitive examination. Appointments of inefficient employees for political reasons are thereby prohibited, thus eliminating the 'spoils system' from State employment." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934), p. 12.)

It is regularly stated that the Constitution itself must be examined to determine whether a particular officer or employee of the state is exempt from the civil service system. (See 67 Ops.Cal.Atty.Gen. 27, 28 (1984); 65 Ops.Cal.Atty.Gen. 475, 479-480 (1982); 63 Ops.Cal.Atty.Gen. 858, 859 (1980); 61 Ops.Cal.Atty.Gen. 68, 71 (1978).)

Here we are directed to two exemptions contained in section 4 of article VII of the Constitution:

"The following are exempt from civil service:

" . . . . . . . . . . . . . . . . . . . . .

"(h) Officers and employees of the University of California and the California State Colleges.

"(i) The teaching staff of schools under the jurisdiction of the Department of Education or the Superintendent of Public Instruction."

These are the only constitutional exemptions that arguably may be applicable to the officers in question.

The academy is authorized to share facilities and to exchange students and instructors with the California State University. (§ 70037.) Its board of governors may contract with the trustees of the California State University for legal services, legislative representation and assistance in curriculum development. (§§ 70022, 89003.) Moreover, section 89004 states in part:

"The trustees, or a designated committee thereof, shall be a board of visitors to the Board of Governors of the California Maritime Academy and shall meet with the board of governors to discuss policies and concepts common to the two institutions, and to advise the board of governors."

Despite these ties, however, the academy is neither a part of the California State University nor of the University of California. (See §§ 70000, 70002, 70010, 89001, 89004 ["the California State University or the trustees shall not be legally responsible in any way for the acts or omissions of the California Maritime Academy or the board of governors"].) The student affairs officers of the academy thus do not come under article VII, section 4, subdivision (h) of the Constitution.

As for the "teaching staff" exemption (Cal. Const., art. VII, § 4, subd. (i)), we have previously mentioned that the academy "is within the Department of Education." (§ 70010.) We believe this organizational structure suffices for the academy to meet the constitutional test of being a school "under the jurisdiction of the Department of Education" even though the board of governors has the statutory responsibility to "provide, maintain, manage, and control" the affairs of the academy (§ 70020). In 56 Ops.Cal.Atty.Gen. 44, 45-46 (1973), we so concluded.

The question remains, however, whether the academy personnel in the student affairs officer class series constitute "teaching staff." The "teaching staff" language has been in the Constitution since 1934. In California State Employees' Assn. v. Trustees of the California State Colleges (1965) 237 Cal.App.2d 530, 539, the Court of Appeal noted "the expressed will of the people that professors and teachers shall not be within civil service." No other reported case has considered this provision.

The student affairs officers are not professors or teachers. They do not give instruction in the curriculum of the academy, have teaching credentials, perform in a classroom setting, assign work in an academic subject, or issue grades evaluating the progress of the students. While no single factor is dispositive, we do not view providing recruitment, admissions, registration, financial aid, career placement, and counseling services in the same light as "teaching." The latter term is commonly defined as "to cause to know a subject," "guide the studies of," or "conduct through a course of studies." (Webster's New Internat. Dict. (3d ed. 1971), p. 2346.) Something more is required than imparting information. "Teaching" may be compared with similarly defined words as follows:

> "Teach is a general term for causing one to acquire knowledge or skill, usu. with the imparting of necessary incidental information and the giving of incidental help and encouragement . . . . INSTRUCT may suggest methodical, continuing, or formal teaching . . . . EDUCATE may apply to more pretentious processes of teaching and instruction designed to ensure full development of the capacities of a more intelligent person . . . . TRAIN may suggest methodical, thorough instruction and guidance with a specific end in mind until rapid and successful execution of duties and tasks is assured . . . . DISCIPLINE calls attention to subordination to a master or subjection to control, sometimes one's own . . . . SCHOOL often interchangeable with others in this set, perhaps more often has suggestions of TRAIN although it lacks the specificity of this latter

word . . . .   COACH is likely to refer to training with demonstration and practice in some specialized, often extracurricular activity . . . .   TUTOR usu. applies to teaching on an individual basis in some specialized subject . . . ."   (Ibid.)

If the entire staff of the academy, including nonteaching positions, were intended to be excluded from state civil service, the academy need only have been placed in the same constitutional exemption as the University of California and California State University.

Our analysis of the Constitution is supported by the Legislature's statutory scheme implementing the constitutional provision establishing the state civil service system.  (Gov. Code, §§ 18500-19798; see 63 Ops.Cal.Atty.Gen. supra, 859).  With respect to the officers and employees of the academy, the Legislature has provided:

"The 'state civil service' shall include all personnel appointed or employed at the state nautical school except personnel whose duties consist of instructing students or supervising such instructional personnel and except students enrolled at the school who are working part time as students assistants."  (Gov. Code, § 18598.)[3]

The "personnel whose duties consist of instructing students" would be the academy's teaching staff.  "Instructing" students is the equivalent of "teaching" them.  (See Webster's, supra, p. 1172.)  The duties of the officers in question do not "consist of instructing students."  They do not meet the test for exclusion from civil service under the terms of Government Code section 18598.

As noted, we must accord great weight to the administrative regulations of the academy's board of governors that exclude the student affairs officers from state civil service.  Nevertheless, it is not the view of the board of governors that is controlling but rather "the intent and objective of the drafters of the provision and the people by whose vote it was adopted" (Mosk v. Superior Court (1979) 25 Cal.3d 474, 495) in placing the state civil service provisions in the Constitution.  Not even the Legislature may create exemptions from state civil service. (67 Ops.Cal.Atty.Gen. supra, 479-480.)

"A constitutional amendment should be construed in accordance with the natural and ordinary meaning of its words."  (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245; see In re Quinn (1973) 35 Cal.App.3d 473, 482.)  We reject the argument that the providing of recruitment, admissions, registration, financial aid, career placement, and counseling services may be equated with the services of the "teaching staff" as that term was contemplated by those drafting and voting for the constitutional provision.

---

[3]The academy is also known as the state nautical school.  (§ 70002.)

The administrative regulations appear to recognize this dichotomy by referring to the duties of the student affairs officers as not being part of the faculty of the academy but rather "in very closely related professional activities." (Cal. Admin. Code, tit. 5, § 60002.) These officers are not considered "[a]cademic employees who are qualified to give instruction in the professional development of the midshipmen." (Ibid.) They do not have the duties "[t]o educate each midshipman in an accredited college program," "[t]o train each midshipman in the skills and knowledge essential to licensing in the United States Merchant Marine," "[t]o develop in each midshipman a strong sense of duty, honor and service to country and instill in him a pride in his profession," or "[t]o develop in each midshipman a sound body and the physical attributes necessary to meet successfully the rigors of the sea." (Ibid.)

In sum, the regulations of the board of governors are in conflict with article VII of the Constitution and Government Code section 18598. The officers "in very closely related professional activities" to that of teachers and instructors are not the "teaching staff" of the academy and do not have duties that "consist of instructing students." Concededly, the constitutional and statutory provisions must prevail over the regulations of the board of governors.

In answer to the question presented, therefore, we conclude that the officers in the student affairs officer class series at the academy are included in the state civil service system as required by the Constitution and Government Code section 18598.